# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2015 APR 16 P 12: 41

David Fischer

v.

New Hampshire Parole Board

Docket#: 1:15-cv-130-PB

---

**PETITION UNDER 28 U.S.C. § 2254**

**FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

---

**Addresses**

Petitioner - David Fischer, 620 Somerville St. 2F, Manchester, NH 03104

Respondent – N.H. Parole Board, PO Box 14, Concord, NH 03302

## Petition

1. **(a) Name and location of the court that entered the judgment of conviction you are challenging:**
   Strafford County Superior Court
   259 County Farm Road
   Dover, NH 03820
   **(b) Criminal docket or case number:** 219-2010-CR-0127 (338525C-338526C)

2. **(a) Date of judgment of conviction:** December 9, 2010

   **(b) Date of sentencing:** May 25, 2011

3. **Length of sentence:** 5 to 10 years, stand committed (338525C)

   5 to 10 years, suspended, (338526C)

4. **On this case, were you convicted of more than one crime?** Yes

5. **Identify all crimes of which you were convicted and sentenced in this case:**

   Two (2) counts of Second Degree Assault, RSA 631:2, I (c)

6. **(a) What was your plea?** Not guilty

**(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what do you plead not guilty to?** N/A

**(c) If you went to trial, what kind of trial did you have?** Jury Trial

7. **Did you testify at a pre-trial hearing, trial, or post-trial hearing?** Yes (sentencing hearing only)

8. **Did you appeal from the judgment of conviction?** Yes

9. **If you did appeal, answer the following:**

**(a) Name of Court:** New Hampshire Supreme Court

**(b) Docket or case number:** 2011-0451

**(c) Result:** Affirmed

**(d) Date of result:** November 26, 2013

**(e) Citation to the case:** State v. David Fischer, 165 N.H. 706 (2013), No. 2011-0451, 11/26/2013

**(f) Grounds raised:**

The following grounds were raised by appellate counsel, briefed and argued:

◊ The trial court erred in allowing a third party to testify about [alleged victim's] statements to her

◊ The State presented insufficient evidence to convict [Petitioner] of Second Degree Assault

◊ The trial court erred in its instructions defining the element of extreme indifference to the value of human life

◊ The trial court erred in pronouncing sentence on both counts

◊ The trial court committed plain error in failing to give instructions adequate to ensure that the jury could not convict without agreeing unanimously on a particular bodily injury

The following grounds, that were not raised by counsel, were raised by the defendant via a request to file a pro se supplemental brief and within said brief. The New Hampshire Supreme Court denied leave to file and said issues were neither briefed nor argued to said court:

- ◊ The trial court erred when it declined to find RSA 631:2, I (c) unconstitutionally vague in that the statute requires a finding of two distinct states of mind – "recklessly" and "extreme indifference to the value of human life."
- ◊ The trial court erred when it allowed the state to tell the jury, and when it instructed the jury, that the alleged victim's testimony did not need to be corroborated and that the alleged victim's uncorroborated testimony alone was sufficient to sustain a conviction despite the fact that no other person observed the charged "injuries."
- ◊ The trial court erred when it denied trial counsel's attempt to elicit testimony about medications the alleged victim regularly took and the side-effects thereof, or trial counsel's failure to make a Rule 803 (17) argument, or obtain an expert witness, was ineffective assistance of counsel.
- ◊ The trial court erred when it found that the evidence was sufficient to convict the defendant beyond a reasonable doubt, i.e. that there were no "contusions" to the alleged victim's "head and neck" as charged in the indictments.
- ◊ The trial court erred when it found that the evidence presented at trial and the jury instructions given did not constructively amend the indictments.
- ◊ The trial court erred when it failed to further inquire into allegations that sequestered witnesses had been comparing testimony after each testified.

**(g) Did you seek further review by a higher state court:** No (no higher state court exists)

**(h) Did you file a petition for writ of certiorari to the United States Supreme Court?** No

**10. Other than the direct appeals listed above, have you previously filed other petitions, applications, or motions concerning this judgment of conviction in any state court?** Yes

**11. If your answer to Question 10 was "Yes," give the following information:**

**(a) (1) Name of court:** Strafford County Superior Court

**(2) Docket or case number:** 219-2010-CR-0127 (338525C-338526C)

**(3) Date of filing:** October 14, 2011

**(4) Nature of proceeding:** Motion for New Trial

**(5) Grounds raised:** Ineffective assistance of counsel regarding counsel's failure to:

- Investigate / depose witnesses
- Timely seek discovery of alleged victim's mental health records
- Timely seek discovery of alleged victim's phone & text records
- To seek production of alleged victim's work records
- To timely obtain transcript of alleged victim's prior sworn testimony
- To consult a pharmaceutical-medical expert and present testimony thereof
- Conceding guilt in closing argument
- To clarify issues for jury in closing argument
- To object to jury instructions
- To properly argue that the charges, testimony and jury instructions constructively amended the indictments
- To argue that the jury needed to be unanimous as to what bodily injury was caused
- To ensure that the jury was properly instructed on the elements of the offense

**(6) Did you receive a hearing where evidence was given on your motion?** Yes

**(7) Result:** Motion/relief denied

**(8) Date of Result:** March 22, 2012

**(9) Other: Motion for Reconsideration:** Denied, June 6, 2010

**(10) Renewed Motion for Reconsideration:** Denied, July 10, 2012

**(b) If you filed any second petition, application, or motion, give the same information.**

**(1) Name of court:** Hillsborough County Superior Court – Northern Division

**(2) Docket or case number:** 216-2014-CV-00699

**(3) Date of filing:** October 27, 2014

**(4) Nature of proceeding:** Petition for Writ of Habeas Corpus

**(5) Grounds raised:**

- Trial counsel was ineffective for failing to move for a directed verdict of not guilty at the close of evidence based on insufficient evidence of "bodily injury"1 as charged in the indictment and appellate counsel was ineffective for failing to raise this issue on appeal.

[1] While trial counsel moved for dismissal based on insufficient evidence of "extreme indifference" [T2, 92], counsel made no such motion based on insufficient evidence of bodily injury.

- Trial counsel was ineffective by failing to object to the court's instruction on the definition of "bodily injury" and appellate counsel was ineffective for failing to raise this issue on appeal as plain error.
- Trial counsel was ineffective for failing to object to the constructive amendment to the indictment(s) that occurred via the State's presentation of evidence of a "bruise" to the alleged victim's back and the trial court's instruction to the jury that did not preclude the jury from basing its verdict on uncharged "injuries." Appellate counsel was ineffective for failing to raise this issue on direct appeal as plain error.
- Trial counsel was ineffective for failing to request a specific unanimity instruction and appellate counsel was ineffective for failing to provide the Supreme Court with case law to support his plain error argument.
- Trial counsel was ineffective for failing to move for medical provider's testimony to be excluded as inadmissible hearsay
- Trial counsel was ineffective for failing to ensure that the jury was properly instructed on and appellate counsel was ineffective for failing to properly argue that "Extreme Indifference to the value of human life" requires <u>more than</u> a substantial risk of death and <u>more than</u> a gross deviation from law abiding conduct, and is a heightened form of ordinary recklessness.

**(6) Did you receive a hearing where evidence was given on your motion?** No

**(7) Result:** Denied

**(8) Date of Result:** January 4, 2015

**(c) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?**

**(1)** Motion for New Trial - Yes. However, appeal of denial of Motion for New Trial was not accepted for review. See: N.H. Supreme Court Order, dated March 21, 2012

**(2)** Petition for Writ of Habeas Corpus - Yes. However, appeal of denial of Petition for Writ of Habeas Corpus was not accepted for review. See: N.H. Supreme Court Order, dated April 6, 2015.

**(d) If you did not appeal to the highest state court having jurisdiction, explain why you did not:** N/A

**12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. State the facts supporting each ground:**

## PRELIMINARY STATEMENT OF FACTS

The defendant was charged with one (1) count of Second Degree Assault, RSA 631:2, I (a), alleging that he recklessly caused serious bodily injury, by "slamm[ing] a door on Tracy Fischer's[2] left hand, causing her to suffer a fractured finger" [T1, 4].[3] The defendant was acquitted of this charge and was also acquitted of the lesser included offense of Simple Assault, RSA 631:2-a, I (b) [T2, 169].

Under indictments #338525C and #338256C, the defendant was charged with two (2) counts of Second Degree Assault, RSA 631:2, I (c), each alleging that he "recklessly" caused "bodily injury to another under circumstances manifesting extreme indifference to the value of human life," to wit: that he:

- (1) "grabbed Tracy Fischer by the neck, slammed her head into a wall and threw her onto the floor, causing contusions and muscle strain in her head and neck," and that he;
- (2) "knocked Tracy Fischer to the floor, stepped on her head and dragged her by her hair and sweatshirt hood from the kitchen into the living room, causing contusions and muscle strain to her head and neck." [T1, 4-5]

The defendant was convicted of both charges [T2, 170].

While the defendant disputes the factual accuracy of Tracy Fischer's version of events, Tracy Fischer (hereinafter "Tracy") testified that the defendant committed the actions as alleged in the indictments, with little elucidation.

Tracy testified that the incident(s) that gave rise to the instant charges began shortly after she arrived home at "just about ten o'clock" p.m. [T1, 30; T1, 81][4]. Tracy testified that immediately prior to the first alleged assault she threw her wedding rings at the defendant [T1, 37; T1, 71]. In response to Tracy's aggressive act toward him, Tracy testified that the defendant grabbed her by the neck and "put [her] head into the wall" [T1, 37] and then threw her onto the floor [T1, 37-38]. The incident lasted mere seconds and there was no prolonged or repeated attack. Tracy did not lose consciousness [T1, 79]. The defendant then left the residence [T1, 38]. The defendant did not

---

2 The indictments reference Tracy Fischer, while the trial transcripts reference Tracy by her maiden name, Loignon. The defendant uses the name in the indictments.

3 Citations to the record are as follows:
T1 = Trial Transcript, December 7, 2010.
T2 = Trial Transcript, December 8-9, 2010. (Dec. 8 = pp. 1-166; Dec. 9 = pp. 167-212)
T3 = Trial Transcript, Day Four.

4 The original complaints specify that the first alleged assault occurred at 10:40 p.m. and that the second alleged assault occurred at 11:00 p.m.

punch, kick, or slap Tracy, nor did he use a weapon, or threaten to use a weapon against her [T1, 87].

Tracy testified that shortly after the first alleged assault the defendant returned to the house and shortly thereafter came up behind her and put his hand over her mouth [T1, 45]. Tracy did not have trouble breathing [T1, 46]. Tracy responded by biting the defendant's finger [T1, 45; T1, 86-87]. Tracy testified that the defendant responded by knocking her to the floor [T1, 45]. Tracy testified that the defendant then briefly stepped on her head, but did not stomp on her or kick her [T1, 46, T1, 87], and she did not feel pain [T1, 46]. Tracy testified that the defendant then dragged her by her hair and sweatshirt hood across a floor [T1, 46-47] and that the defendant then went upstairs and left her downstairs [T1, 48; T1, 89]. There was no prolonged or repeated attack. The incident lasted mere seconds. The defendant did not punch, kick, or slap Tracy, nor did he use a weapon, or threaten to use a weapon against her [T1, 87].

Tracy testified that she was not in pain after the alleged assaults [T1, 49].

Tracy's testimony establishes that the defendant twice retreated to avoid the initial confrontation [T1, 35; T1, 37; T1, 70]. Tracy's testimony also establishes that the defendant repeatedly retreated to avoid further conflict after the initial and subsequent confrontation(s) [T1, 38; T1, 41; T1, 44; T1, 48; T1, 78; T1, 82-83; T1, 89] and also that the defendant was not "yelling or [] angry" [T1, 41; T1, 45]. Tracy's testimony also establishes that at no time did Tracy attempt to retreat or leave a room to avoid confrontation – in fact the opposite is true. Tracy stated that after the defendant retreated upstairs and stayed there she went up to the bedroom [T1, 85] and again the defendant retreated [T1, 44; T1, 82-83] to avoid further confrontation.

Notably, Tracy claimed not to remember most details outside of the basic elements of the alleged offense, responding "I don't remember" no less than 56 times (17 times to the State, 39 times to the defense) during her testimony [T1, 26-117], mostly in response to defense counsel's questions and in response to questions that it would be virtually impossible not to remember, e.g. where she was when the defendant returned to the house [T1, 39], whether the defendant was wearing any footwear when he allegedly stepped on her head [T1, 66], or whether he said anything while doing so [T1, 46; T1, 87].

At some point, while the defendant was upstairs sleeping, Tracy used her cell phone to call her friend "Kate" and purportedly told her "what was happening" [T1, 48; T1, 89]. Tracy did not ask

Kate to call the police or to come pick her up, nor did Kate do either. Tracy did not call the police herself.

Tracy testified to an additional confrontation the following morning, which resulted in the defendant being charged with slamming a door on Tracy's finger as she left the residence, causing Tracy to suffer a fractured finger. The defendant was acquitted of this charge.

After leaving the residence, at approximately 6:00 a.m.,[5] Tracy drove alone from Dover, NH to York, ME, a thirty (30) minute trip. Upon arriving at her place of employment, York Hospital, in order to have her finger examined, Tracy spoke with a triage nurse in the hospital emergency room at 7:09 a.m. [T2, 16], to a treating nurse in the emergency room [T2, 29], to a doctor, Eliot Smith, MD [T1, 56; T2, 16], and presumably to an x-ray technician [T2, 22], before being discharged.

The State produced no testimony from any of the people with whom Tracy interacted at the York Hospital emergency room that they had observed Tracy to be in an excited state of mind. In fact, Dr. Smith, the State's witness, specifically observed that Tracy was in "no acute distress" [T2, 30]. Dr. Smith did not testify to observing any "contusions," bruises or marks to Tracy's head and neck [T2, 21], nor did Tracy complain of such injuries [T1, 104-105; T2, 27-28]. The York Hospital ER discharge summary did not indicate any limitations on work and Tracy proceeded to work in her department after discharge [T1, 105].

Tracy spoke to several co-workers in the department in which she worked, including Pamela Damrill [T1, 57-58; T1, 122]. State's witness Pamela Damrill (hereinafter "Damrill"), Tracy's "really good friend" [T1, 123], testified that she saw Tracy in the York Hospital ER and that Tracy "was very pale looking" and "looked disheveled" [T1, 125]. However, the York Hospital medical reports noted that Tracy's skin was "pink" [T2, 27]. Damrill noted that Tracy's "finger was all bruised and swollen" [T1, 125][6], but did not testify to observing any "contusions" bruises or marks to Tracy's "head or neck."

While at York Hospital, Tracy did not mention an alleged assault to any of her co-workers [T1, 58]. Tracy did not leave work on her own initiative because of her claimed injuries, but rather, because "the girls at work made [her] go home" [T1, 105]. The State presented no testimony from

[5] Tracy normally starts work at 7:00 a.m. [T1, 105]. It is a thirty (30) minute drive from Dover to York [T1, 106], meaning Tracy would need to leave Dover by 6:30 a.m. Tracy testified she left approximately a half-hour before she would normally leave for work [T1, 51-52], which equates to 6:00 a.m.

[6] The defendant was acquitted of the charge related to these injuries.

any of Tracy's co-workers or ER personnel that they observed Tracy in a excited state of mind or that they observed the "contusions" to Tracy's "head and neck" charged in the indictments.

Upon leaving York, Tracy called her brother on her cell phone [T1, 59]. Tracy next called and spoke to her co-worker, Pamela Damrill [T1, 59]. The court would not allow the State to have Damrill testify to what Tracy's told her because the statement did not qualify as an "excited utterance" exception to the hearsay rule due to the "intervening events" at the hospital before Tracy changed her story hours later and told Damrill that the defendant had assaulted her [T1, 133].

Finally, Tracy called and spoke to Kristin Busch (hereinafter "Busch"), her mother's domestic partner [T1, 140-141], at approximately 8:45 a.m. [T1, 59; T1, 141]. Busch testified that Tracy was "tearful; her voice was shaky" [T1, 141]. Because the court found that Tracy was "tearful and scared," the court allowed Busch to testify to what Tracy told her had happened as an "excited utterance" exception to the general hearsay rule [T1, 144]. Busch's testimony largely mirrored Tracy's testimony about what she claimed occurred [T1, 145-150].

Tracy drove from York, ME, to her brother's house in Barrington, NH – a trip of approximately thirty minutes [T1, 105] – and "momentarily" left to go to Dover Police Department with her brother [T1, 106]. Tracy testified that it took "20 minutes" to get from Barrington to Dover [T1, 107], which places Tracy's arrival in Dover at approximately 9:45 a.m. However, the officer taking Tracy's statement, Jason Feliciano (hereinafter "Feliciano") testified that he did not meet with Tracy until "early afternoon" [T2, 54]. Tracy gave a video statement to Feliciano [T1, 60; T1, 107], but prior to doing so had an unrecorded conversation with him that could have lasted an hour [T1, 107; T2, 67]. Feliciano testified that he observed "a mark on the left side of [Tracy's] neck, and... a bruise on the back side of her shoulder" [T2, 57] (emphasis added). Feliciano further described the "mark" on Tracy's neck as "red areas" [T2, 58] and "red marks" [T2, 65]. Feliciano testified that the "bruise" to Tracy back was photographed and claimed the bruise he observed was visible in said photograph [T2, 58]. This photograph was entered into evidence as State's exhibit 24 [T2, 58]. Feliciano testified that Tracy did not tell him she had suffered any injury to the back of her head and that "[t]he only injuries [Tracy] suffered is – is the one she had mentioned" [T2, 65] (emphasis added). Feliciano gave no testimony that he had observed any "contusions" or bruises to Tracy's "head and neck" as alleged in the indictments.

After meting with Feliciano, Tracy went to the Dover District Court to obtain a restraining order [T1, 60].

Because Tracy had failed to mention any "contusions" or bruises to her "head and neck" when she was seen at York Hospital, the "police [] recommended for [Tracy] to be seen in the ER again" [T1, 60]. Tracy therefore "went to the Wentworth-Douglass ER" [T1, 61] for investigatory purposes and for documentation rather than for treatment. Tracy was seen in the Wentworth-Douglass ER by Robin Schumaker, APRN "somewhere between 3:30 and 4:00 p.m. [T2, 75]. Tracy testified that she did not remember having a headache or "remember being in a lot of pain" while at Wentworth-Douglass [T1, 61], but Schumaker testified that Tracy complained of "some pain in the back of her head and in her neck… and on her back near her right shoulder [T2, 77]. Schumaker did not deem Tracy's complained of injuries significant enough to require an MRI, CT scan, or x-rays of her head [T1, 109; T2, 84-85], but had x-rays taken of Tracy's neck [T2, 79; T2, 84], which indicated "no acute injury" [T1, 109]. Schumaker agreed when asked if Tracy appeared "normal" and was in "no acute distress" [T2, 87]. Schumaker testified that he observed "visible bruising… on [Tracy's] back near her right shoulder blade, some tenderness… on the back of her head and on the front of her neck… and some visible bruising or a hematoma on her index finger…" [T2, 78]. Notably, Shumaker referred to "bruising" on Tracy's back and finger, but mere "tenderness" on Tracy's "head and neck." Schumaker testified that he did not observe any red marks, bruising or "contusions" to Tracy's "head" or "neck" [T2, 82-83]. Specifically, Schumaker testified that he observed a bruise only on Tracy's back [T2, 78], which was on the "right side [of Tracy's] shoulder blade [T2, 83], which he testified could have been caused by a 20-lb. lead overcoat Tracy wore for work [T2, 83]. Shumaker also specifically testified that he "[d]id not see any marks" on either side of Tracy's head or neck [T2, 82-83]. Defense counsel posed the question to Schumaker: "You've made some records there of tenderness in the neck, head and – but you didn't see anything by way of observation?" Shumaker responded, "[t]hat's correct" [T2, 87]. Schumaker gave no testimony that he observed "contusions" or bruises to Tracy's "head and neck" as alleged in the indictments. Schumaker also testified that he did not observe the bruise on Tracy's back in the location claimed by Officer Feliciano, to appear in State's exhibit 24 [T2, 89]. The Wentworth-Douglass ER discharge summary did not indicate any limitations upon returning to work [T1, 113].

## GROUND ONE

The Petitioner's rights under the 5th and 14th Amendments were violated by the State courts' declining to find RSA 631:2, I (c) unconstitutionally vague in that the statute requires a finding of two distinct states of mind – "recklessly" and "extreme indifference to the value of human life."

**(a) Supporting facts:**

The Second Degree Assault statute, RSA 631:2, I (c), under which the petitioner was charged requires that the State prove three elements beyond a reasonable doubt:

1) The defendant acted recklessly; and
2) The defendant caused bodily injury; and
3) The bodily injury was inflicted under circumstances manifesting extreme indifference to the value of human life

"Extreme indifference to the value of human life" is an aggravated version of "recklessness." Accordingly, the statute is unconstitutionally ambiguous on its face because it requires two separate states of mind.

**(b) If you did not exhaust your state remedies on Ground One, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground One**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** Issue was raised, however, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial of counsel's motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:** None

## GROUND TWO

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated in that the jury instructions failed to fairly comprise and adequately and accurately explain the elements of the offense of Second Degree Assault for recklessly acting with extreme indifference to the value of human life and when they failed to grant the petitioner a new trial because of this error. Moreover, trial counsel was unconstitutionally ineffective for failing to ensure the jury was properly instructed on these definitions, as was appellate counsel for failing to raise this issue on direct appeal.

**(a) Supporting facts:**

The jury was given the following instruction defining Second Degree Assault:

> "That the defendant caused bodily injury to another person and the bodily injury was inflicted under circumstances manifesting extreme indifference to the value of human life. And the defendant acted recklessly.

The jury was given the following instruction of Recklessly:

> "To prove the Defendant acted recklessly, the State must first prove that the Defendant was aware of a substantial and unjustifiable risk.
>
> This means that there must be proof that the Defendant knew there was a substantial risk that his conduct would cause a particular result.
>
> Second, if the Defendant was aware of the risk, there must be proof that the Defendant consciously disregarded the risk. In other words, the Defendant decided to disregard the risk and took a chance that doing certain acts that a particular result would occur.
>
> Third, you must examine the circumstances known to the Defendant. From what he knew of the circumstances, you must decide whether his disregard of the risk was a gross deviation from what a law-abiding person would have done.
>
> The key words here are gross deviation. If you find the Defendant acted recklessly, you must find that his disregard of the risk was a substantial departure from the actions of a law-abiding person under the same circumstances.
>
> It is not enough for the State to prove the Defendant acted negligent, that is, that it's not enough to prove [he] failed to become aware of the risk involves. The State must prove the Defendant was aware of the risk and consciously disregarded it."

The jury was given the following instruction on "extreme indifference to the value of human life":

> "[T]o act under extreme indifference to the value of human life means that the defendant's acts demonstrate a blatant disregard for the risk to [the alleged victim's] life. It is not necessary the injury – or series of injuries themselves be life threatening."

The instruction on "Recklessly" informed the jury that the "defendant decided to disregard the risk and took a chance of doing certain acts that a particular result would occur" without informing the jury of what "particular result" was risked.

The failure to clearly define the risked result was compounded by the court's instruction that the "particular result" that must occur was "bodily injury" when instructing on the elements of Second Degree Assault. This problem was further compounded by the court's instruction that "it is not necessary that the injury -- or series of injuries themselves be life threatening" when instructing on "extreme indifference to the value of human life."

The instructions on "extreme indifference to the value of human life" informed the jury that it must find the petitioner's "acts demonstrate[d] a blatant disregard to the risk to [the allege victim's] life" but did not specify that a blatant disregard to a risk of death was required. "Risk to life" is not as specific as "risk of death" as "death" is a specific result, whereas "to life" is not. Further, especially when taken with the other jury instructions, the jury could have misunderstood that a risk of bodily injury was sufficient for conviction while the law requires a risk of death.

Under the law, "extreme indifference to the value of human life" is an aggravated form of recklessness. Thus, the instruction on "extreme indifference to the value of human life" should have qualified the instruction on "recklessly." However, the instruction on "Recklessly" appears to have defined what is meant by "extreme indifference to the value of human life" rather than the other way around.

Trial counsel failed to make these arguments and appellate counsel failed to raise these issues on direct appeal.

**(b) If you did not exhaust your state remedies on Ground Two, explain why:** N/A - exhausted

**(c) Direct appeal of Ground Two**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** N/A. Issue presented to highest State court on direct appeal.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two:** None

## GROUND THREE

The Petitioner's rights under the 5th and 14th Amendments were violated when the State told the jury, and when the trial court instructed the jury, that the alleged victim's testimony did not need to be corroborated and that the alleged victim's uncorroborated testimony alone was sufficient to sustain a conviction.

**(a) Supporting facts:**

During its closing argument, the State told the jury that a verdict could be based solely on the alleged victim's testimony because "[She] came in here and told you what the defendant did to her" and that her testimony did not need to be corroborated. The State further said, "if you believe [her] testimony, then you can convict the defendant without any additional evidence"

The trial court's instructions to the jury was a verbatim recitation of the model criminal jury instruction for RSA 632-A:6, I - Corroboration, highlighting that: "the law does not require that the testimony of the alleged victim be corroborated. This means that if you find [her] testimony is credible - in other words, if you believe her testimony - then you may return a verdict of guilty without additional evidence"

The trial court's use of an instruction that pertains exclusively to sexual offenses was error and improperly bolstered the State's misstatement of law, which deprived the defendant of a fair trial and the degree of proof required by the State and Federal constitutions.

**(b) If you did not exhaust your state remedies on Ground Three, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Three**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** Issue was raised, however, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial

of counsel's motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:** None

**GROUND FOUR**

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated where the trial court allowed, as an excited utterance exception, hearsay testimony from Kristin Busch regarding statements allegedly made to her by the alleged victim and where the N.H. Supreme Court failed to grant the petitioner a new trial based on this error.

**(a) Supporting facts:**

Over trial counsel's objection, in this case the trial court admitted the alleged victim's statements to Kristin Busch (hereinafter "Busch") under the "excited utterance" exception to the general hearsay rule when said statements were made several hours after the alleged exciting event had occurred and after the alleged victim had previously allegedly contrived and misrepresented versions of events to others.

The N.H Supreme Court found that the admission of Busch's testimony was error, but that the error was harmless. The error was not harmless as it bolstered the alleged victim's credibility. It was also not harmless in light of the erroneous admission of Schumaker's testimony. See: Ground Twelve.

**(b) If you did not exhaust your state remedies on Ground Four, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Four**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** Issue was raised, however, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial

of counsel's motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:** None

**GROUND FIVE**

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated where the trial court denied trial counsel's attempt to elicit testimony about medications the alleged victim regularly took and the side-effects thereof. Alternatively, trial counsel was unconstitutionally ineffective for failing to properly argue for the admissibility of this evidence.

**(a) Supporting facts:**

Trial counsel attempted to elicit testimony from Tracy about medications she regularly took [T1, 72] to establish a foundation for admission of evidence that said medications, Humira and Methotrexate, have the side-effects of "bruising easily" (Humira) and "unusual bleeding or bruising" (Methotrexate).

The State objected arguing that such information was not relevant. However, the court did not base its ruling on relevancy. Moreover, a reasonable, alternative explanation for the bruises Tracy claimed (but are not visible in photographs and were not viewed on her "head and neck" by others) was highly relevant and probative of her credibility and to the question of whether she suffered the injuries alleged in the indictments.

Ultimately, the lower court ruled that trial counsel could not question Tracy about her medications, or the side-effects thereof, without an expert witness. This was error.

**(b) If you did not exhaust your state remedies on Ground Five, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Five**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** Issue was raised, however, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial of counsel's motion to exceed page limit

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five:** None

## GROUND SIX

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated in that trial counsel provided unconstitutionally ineffective assistance of counsel by failing to adequately prepare for trial, by failing to conduct a proper pre-trial investigation, failing to obtain important exculpatory evidence, failing to interview witnesses, and failing to obtain the services of an expert witness (or failing to argue the evidence of easy bruising should have been allowed without an expert), by conceding guilt, for failing to clarify the issues of the case during his closing argument, and for failing to properly object to erroneous jury instructions.

**(a) Supporting facts:**

The alleged victim in this case, Tracy, has a history of having an extremely explosive temper and of being abusive to past partners. Her third husband left the marriage due to abusiveness. The petitioner was the alleged victim's fourth husband. Upon information obtained from the alleged victim's third husband, she had previously underwent mental health treatment for her explosive rage and abusiveness. Trial counsel made no effort to interview the alleged victim's ex-husband in order to determine if information could be obtained to impeach the alleged victim at trial. Moreover, trial counsel failed to investigate whether the alleged victim's counseling/mental health records could be obtained to determine if they contained information that would impeach the alleged victim's truthfulness at trial.

Prior to trial, the alleged victim claimed in her original statements to police that the petitioner had taken her cell phone and would not give it back and that thus, she was unable to summon the police or other help while the petitioner allegedly assaulted her. However, the petitioner informed trial counsel that he had never taken the alleged victim's cell phone and that she had in fact used it during the time when she alleged the petition had held her against her will and was assaulting her. Counsel made zero effort to obtain the alleged victim's telephone records or to interview the person the alleged victim was speaking with, and thus never learned whether the alleged victim had mentioned being assaulted or held against her will. That person was also never interviewed by the State or called as a prosecution witness at trial, which presumably would have happened had the alleged victim told this person she had been assaulted.

The alleged victim had testified under oath at a proceeding to obtain a protective order. Upon reason and belief, this testimony substantially differed from the alleged victim's testimony at trial. However, despite repeated pleas from the petitioner, trial counsel did not obtain a transcript of this proceeding and thus was unable to impeach the alleged victim with her own prior sworn contradictory statements.

The alleged victim regularly ingested the proscribed medications Humira and Methotrexate as treatment for rheumatoid arthritis. These medications have the documented side-effects of causing the user to "bruise easily." Given that the petitioner was charged with causing bruises, a reasonable, alternative explanation for bruising would have been highly probative in this case. Because trial counsel failed to secure the services or an expert witness, the trial court ruled the jury could not hear this information. Counsel provided ineffective assistance of counsel for failing to secure an expert witness, or in the alternative for failing to argue that the information was admissible without an expert under Rule 803(17), exception to hearsay.

During his closing argument to the jury and throughout the trial Attorney White conceded the defendant was guilty of "something," but without ever explaining to the jury what that something was. This could have been construed by the jury as an admission that the defendant was guilty of either the greater or the lesser offense. This was unconstitutionally ineffective assistance of counsel.

The key issue in this case was whether the defendant's actions amounted to "extreme indifference to the value of human life." Yet, Attorney White, in his closing argument to the jury, made only a

cursory attempt to explain this to the jury. This violated the defendant's right to a fair trial, and his right to effective assistance of counsel.

**(b) If you did not exhaust your state remedies on Ground Six, explain why:** N/A – exhausted by filing a Motion for New Trial in trial court, which was denied, and which the state's highest court declined to accept on appeal

**(c) Direct appeal of Ground Six**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** No

**(2) If you did not raise this issue in your direct appeal, explain why:** Because claims of ineffective assistance of counsel are generally inappropriate for review on direct appeal.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** Yes

**(2) If your answer to Question (d)(1) is "Yes" state:**

**Type of motion or petition:** Motion for New Trial

**Name and location of the court where the motion or petition was filed:**

Strafford County Superior Court
259 County Farm Road
Dover, NH 03820

**Docket or case number:** 219-2010-CR-0127 (338525C-338526C)

**Date of the court's decision:** March 22, 2012

**Result (attach copy of order):** Motion/relief Denied

**(3) Did you receive a hearing on your motion or petition?** Yes

**(4) Did you appeal from the denial of your motion or petition?** Yes

**(5) If answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?** Yes

**(6) If your answer to Question (d)(4) is "Yes," state:**

**Name and location of the court where the appeal was filed:**

New Hampshire Supreme Court
One Charles Doe Drive
Concord, NH 03301

**Docket or case number:** 2012-0468

**Date of court's decision:** August 17, 2012

**Result (attach copy of order):** Appeal declined

**(7) If answer to Question (d)(4) is "No," explain why you did not raise this issue:** N/A

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Six:** None

**GROUND SEVEN**

The Petitioner's rights under the 5th and 14th Amendments were violated by the trial court declining to find that the evidence was insufficient to convict the defendant beyond a reasonable doubt re: Bodily Injury.

**(a) Supporting facts:**

The petitioner was charged by indictment with causing "contusions and muscle strain." The word "contusions," plural denotes more than one injury. Moreover, the petitioner was charged with causing these injuries to the alleged victim's "head and neck," i.e. two separate locations.

The evidence did not and does not support a finding of more than one contusion to the alleged victim's "head and neck." Further still, any "injury" does not rise to the level of bodily injury as a matter of law.

**(b) If you did not exhaust your state remedies on Ground Seven, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Seven**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A. However, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial of counsel's motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Seven:** None

## GROUND EIGHT

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated by trial counsel's ineffective assistance for failing to move for a directed verdict of not guilty at the close of evidence based on insufficient evidence of "bodily injury" as charged in the indictment and appellate counsel was ineffective for failing to raise this issue on appeal.

**(a) Supporting facts:**

Based on the evidence presented at trial, no reasonable jury could have found, beyond a reasonable doubt, that the Petitioner caused the "contusions and muscle strain" to Tracy's "head and neck" as alleged in the indictments.

There were NO "contusions," singular or plural, to the alleged victim's "head AND neck" and no testimony that contusions, plural as charged in the indictment, were located in these areas. The evidence was therefore insufficient to convict the Petitioner and the verdict must be reversed.

**(b) If you did not exhaust your state remedies on Ground Eight, explain why:** N/A - exhausted

**(c) Direct appeal of Ground Eight**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** No

**(2) If you did not raise this issue in your direct appeal, explain why:** Trial and appellate counsel ineffectiveness

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** Yes

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Eight:** None

## GROUND NINE

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated by trial counsel's ineffective by failing to object to the court's instruction on the definition of "bodily injury" and appellate counsel's ineffectiveness for failing to raise this issue on appeal as plain error..

**(a) Supporting facts:**

Unfortunately, "bodily injury" is not defined by New Hampshire law, either by statutory law or by common law. However, RSA 625:11 defines "serious bodily injury" as "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body." The terms "severe, permanent or protracted" stem from the word "serious" in "serious bodily injury." Thus, it necessarily follows that "bodily injury" must mean "any harm to the body which causes... loss of or impairment to the health or of the function of any part of the body" that is not "serious, severe, permanent or protracted." But there still must be some aspect of the injury that harms health. There is precedent for this assertion as several New Hampshire cases require some modicum of harm to sustain a finding of bodily injury.

Disregarding the afore-referenced standard of bodily injury and devising its own definition, the trial Court instructed the jury that "bodily injury is any harm, however slight, to the body of another" [T1, 60].[7]

**(b) If you did not exhaust your state remedies on Ground Nine, explain why:** N/A - exhausted

**(c) Direct appeal of Ground Nine**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** No

**(2) If you did not raise this issue in your direct appeal, explain why:** Trial and appellate counsel ineffectiveness

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** Yes

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Nine:** None

---

[7] Notably, this definition was given when the jury was instructed on the lesser-included offense of Simple Assault, but not given when the jury was instructed on Second Degree Assault. This further confused the already ambiguous and incomprehensible jury instructions.

## GROUND TEN

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated because the evidence presented at trial and the jury instructions given did not constructively amended the indictments. Moreover, trial counsel was unconstitutionally ineffective for failing to object to the constructive amendment of the indictments.

**(a) Supporting facts:**

As cited above, both indictments accused the defendant of causing "contusions and muscle strain [to Tracy's] head and neck." However, the jury instructions and the State's evidence in this case broadened the possible bases for conviction beyond those presented to the grand jury.

The bulk of the testimony at trial focused on a single bruise to the alleged victim's back, that was not the subject of the indictments. However, the manner in which the evidence was presented and the instructions given to the jury did not preclude the possibility that the jury based its verdict on this uncharged injury.

**(b) If you did not exhaust your state remedies on Ground Ten, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Ten**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A. However, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial of counsel's motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Ten:** None

## GROUND ELEVEN

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated because trial counsel was ineffective for failing to request a specific unanimity instruction and appellate counsel was ineffective for failing to provide the Supreme Court with case law to support his plain error argument.

**(a) Supporting facts:**

On direct appeal, appellate counsel made a plain error argument that a specific unanimity instruction was required at trial (and that the jury needed to be unanimous as to any injury found to the alleged victim), but counsel failed to provide the N.H. Supreme Court with case precedent supporting this argument, despite such case law being readily available.

On direct appeal, the Supreme Court took an extremely narrow view of the specific unanimity requirement and found that because appellate counsel "does not cite, nor could we find, a case in which a court has held that a jury must be unanimous as to which alleged injury was caused by assault" the error was not plain. State v. Fischer, 165 N.H. 706 (2013); slip opinion 11/26/2013.

The Supreme Court's plain error analysis is overly narrow in that it is well established that due process requires "proof beyond a reasonable doubt of every fact necessary to constitute a crime with which [a defendant] is charged." In re Winship, 397 U.S. 358, 364 (1970).

In any event, whenever the failure to give a specific unanimity instruction raises "a genuine possibility that the jurors were not unanimous as to an element the error is plain." See: United States v. Payseno, 782 F.2d 832, 836-837 (9th Cir. 1986).

To the extent that appellate counsel failed to provide the Supreme Court with "a case in which a court has held that a jury must be unanimous as to which injury was caused by an assault," appellate counsel was ineffective.

The facts in the easily locatable case United States v. Prentice, 638 F. Supp. 2d 911 (D. Minn. 2010), are analogous to the facts here. In Prentice, that defendant was charged with causing "a broken arm, two broken ankles, and long bone injuries to both legs." The court disagreed with the defendant that the indictment was duplicitous, but the court did agree with the defendant that "he was entitled to a unanimous verdict as to any given physical injury." Id. at 1006.

The *Prentice* court reasoned as follows:

> "Given that the victim suffered several injuries, we recognize that there is a potential that a less than unanimous verdict could be returned, if the jurors concluded, in less than unanimous numbers, that the defendant was guilty of one of the charged injuries. For example, certain of the jurors, but less than an unanimous number, might find that the defendant inflicted a broken arm on [the victim], and other jurors, but in less than an unanimous number, might find that the defendant inflicted two broken ankles on [the victim]. While the findings of the jury would not be unanimous as to any particular injury there might be unanimity that the defendant was guilty of inflicting some physical injury upon [the victim]. We agree with the defendant, that he is entitled to a unanimous verdict as to any given physical injury." *Id*. (emphasis added).

The issues in Prentice are virtually identical to the issues presented here. As in Prentice, the jury in this case could have unanimously agreed that the Petitioner caused some physical injury to Tracy, but the Petitioner was nevertheless entitled to jury unanimity as to the specific injuries found by the jury. This did not happen, rendering the Petitioner's trial fundamentally unfair. Significantly, due to the Prentice precedent, the error was plain.

The evidence of bodily injury in this case was not overwhelming. However, even if it was, when "the evidence is so overwhelming that the jury surely would have been unanimous had it been properly instructed on unanimity" the court will still not affirm a verdict when the jury is not given a specific unanimity instruction when one is required. United States v. Edmonds, 80 F.3d 810, 824 (3rd Cir. 1996).

In any event, trial counsel was ineffective for failing to request a specific unanimity instruction and appellate counsel was ineffective for failing to make the Supreme Court aware of the Prentice precedent. Thus, there is "a reasonable probability that the result of the proceeding would have been different" absent these errors. State v. McGurk, 157 N.H. 765, 769 (2008).

**(b) If you did not exhaust your state remedies on Ground Eleven, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Eleven**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A. However, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial of counsel's

motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Eleven :** None

## GROUND TWELVE

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated because trial counsel was ineffective for failing to move for Schumaker's testimony to be excluded as inadmissible hearsay.

**(a) Supporting facts:**

On direct appeal, the Supreme Court agreed with the defendant that the admission of Kristen Busch's testimony was in error, but ruled the error harmless on the basis that "Busch's testimony [] was substantially the same as testimony elicited from the nurse who treated [Tracy] at the Wentworth-Douglass Hospital."

The Supreme Court's determination of harmless error was made without considering the propriety of allowing "the nurse," i.e. Schumaker, to testify as to Tracy's statements to him. Allowing such testimony was also in error. Thus, allowing Busch's testimony could not have been harmless.

Tracy testified that she did not go to Wentworth-Douglass Hospital out of the need for emergency medical attention (indeed, she went there some eight hours after the last alleged assault (of which the defendant was acquitted) and some eighteen hours after the alleged assault at issue here), but rather for investigative purposes. [T1, 60].

Had trial counsel made argument to the trial court that Schumaker's testimony was inadmissible hearsay, a motion to strike said testimony would likely have been granted since Tracy's statements to Schumaker were not for the purpose of treatment and thus would not be admissible under the Rule 803 (4) exception to the general hearsay preclusion. See: State v. Woods, 130 N.H. 721, 728-729 (1988).

As the court state in Woods, “only statements given for the ‘purposes of medical diagnosis or treatment’ are potentially admissible under this exception.’” Id. At 729.

As Tracy’s own testimony established, she did not go to Wentworth-Douglass Hospital for medical diagnosis or treatment, but rather at the direction of the Dover Police, i.e. for investigatory purposes.

Bolstering the defendant’s position is the fact that Tracy went to the hospital only after speaking with the police and went to court to seek a restraining order after speaking to police, but prior to going to the hospital. Put another way, medical treatment was of secondary of tertiary concern. This is because it was not done for medical necessity, but for investigatory purposes.

Because this case hinged entirely on Tracy’s credibility due to the fact that Tracy had no visible injuries, Schumaker’s testimony was of significant importance in bolstering Tracy’s credibility. Had trial counsel sought the exclusion of said testimony and been successful it is highly likely, especially given the other issues in this case, that the defendant would not have been found guilty.

Additionally, without Schumaker’s testimony, the Supreme Court could not have found the admission of Kristen Busch’s hearsay testimony harmless beyond a reasonable doubt.

For these reasons, trial counsel provided ineffective assistance of counsel for failing to seek the exclusion of Schumaker’s testimony.

**(b) If you did not exhaust your state remedies on Ground Twelve, explain why:** N/A - exhausted

**(c) Direct appeal of Ground Twelve**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** No

**(2) If you did not raise this issue in your direct appeal, explain why:** Trial and Appellate counsel ineffectiveness

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** Yes

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Twelve:** None

## GROUND THIRTEEN

The Petitioner's rights under the 5th, 6th and 14th Amendments were violated where the trial court failed to further inquire into allegations that sequestered witnesses had been comparing testimony after each testified.

**(a) Supporting facts:**

Prior to trial, the trial court ordered that all witnesses be sequestered for the duration of trial [T1, 6]. After State's witnesses Tracy Fischer, Pamela Damrill and Kristin Busch testified, State's witness Kerri Kelley brought to defense counsel's attention that the other sequestered witnesses had been sitting together in the same conference room adjacent to the courtroom and that the witnesses had been relaying information related to the questions asked and the testimony given after each had testified. Defense counsel brought these violations of the sequestration order to the trial court's attention, yet the court failed to inquire as to whether the trial had been tainted.

Here, the trial judge refused to inquire into what impact the possible collaboration and relaying of information by the State's witnesses about testimony and questions asked had on the trial. Further, defense counsel had no opportunity to impeach the State's witnesses during their cross-examination because the witnesses had already concluded their testimony when the breach of the sequestration order was discovered.

Because of the court's inaction, the defendant was denied his right to present evidence of the violation of the sequestration order and any impact it may have had on the testimony to the jury. This violated the defendant's Sixth Amendment right and was an unsustainable exercise (or, more accurately, an unsustainable lack of exercise) of discretion.

**(b) If you did not exhaust your state remedies on Ground Thirteen, explain why:** N/A - exhausted via request to file Pro Se Supplemental Brief on direct appeal, denied by state Supreme Court.

**(c) Direct appeal of Ground Thirteen**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A. However, the petitioner was denied leave to file Pro Se Supplemental Brief. Further, appellate counsel was forced to not brief this issue due to state Supreme Court page limit for brief and denial of counsel's

motion to exceed page limit.

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** No. Highest court declined review of issue on direct appeal by denying the petitioner leave to file Pro Se Supplemental Brief.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Thirteen:** None

## GROUND FOURTEEN

The Petitioner's rights under the 5th and 14th Amendments were violated where the trial court found that the defendant could be sentenced on both second degree assault convictions despite the fact that each alleged identical injuries.

**(a) Supporting facts:**

As cited above, both indictments accused the defendant of causing "contusions and muscle strain [to Tracy's] head and neck." The defendant's actions are the means of causing the prohibited injuries. Thus, the defendant can be sentenced on only one count because different actions cannot be the basis for causing the same injury as multiple punishments for convictions on separate charges that constitute the same offense is not permitted

**(b) If you did not exhaust your state remedies on Ground Fourteen, explain why:** N/A - exhausted

**(c) Direct appeal of Ground Fourteen**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** N/A. Issue presented to highest State court on direct appeal.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Fourteen:** None

## GROUND FIFTEEN

The Petitioner's rights under the 5th and 14th Amendments were violated because the enhanced sentence statute, RSA 651:6, II (a), is unconstitutionally ambiguous and did not give constitutional notice to the petitioner as to what circumstances could expose him to an extended term of imprisonment.

**(a) Supporting facts:**

RSA 651:6, II (a) currently provides that: a convicted person may be sentenced to an extended term of imprisonment if the court finds that such a person… "has twice previously been convicted in this state, or any other jurisdiction, on sentences in excess of one year." However, the New Hampshire Supreme Court has found that the phrase "twice previously been convicted… on sentences" is unconstitutionally ambiguous. Based on the Rule of Lenity, any remaining question about the meaning of the statute or the definition of "imprisoned" must be resolved in the defendant's favor.

In 2003, RSA 651:6 was amended to 1) add manslaughter to the offenses covered by RSA 651:6 and 2) to bring the statute in line with *Apprendi*," which requires facts other than prior conviction that expose a defendant to and extended term of imprisonment to be found by a jury. There was no intent to expand the scope of the statute further.

According to the State on direct appeal, "imprisonment" is defined as "the act of imprisoning of the state of being imprisoned" and "the state of being confined; a period of confinement."

More recently, the State conceded during oral argument in different case, that "you could [] take 'convicted' out and put 'imprisoned' back in based on the history because it's clear that [the legislature was] not intending to change the reach of the statute." More significantly, the State conceded that "it has always been the[] intent of [the legislature] that people who serve time more than once and still don't get it..." (emphasis added) can thereafter be exposed to an enhanced sentence under RSA 651:6.

Again, the defendant has served time at the State Prison on ONCE. Thus, it was improper to sentence the defendant to extended terms under RSA 651:6 and said sentences must be vacated.

**(b) If you did not exhaust your state remedies on Ground Fifteen, explain why:** N/A - exhausted

**(c) Direct appeal of Ground Fifteen**

**(1) If you appealed from the judgment of conviction, did you raise this issue?** Yes

**(2) If you did not raise this issue in your direct appeal, explain why:** N/A

**(d) Post-Conviction Proceedings:**

**(1) Did you raise this issue through post-conviction motion or petition for writ of habeas corpus in state trial court?** N/A. Issue presented to highest State court on direct appeal.

**(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Fifteen:** None

**13. Please answer these additional questions about the petition you are filing:**

**(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?** Yes

**(b) Is there any ground in this petition that has not been presented in some state or federal court?** No

**14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction you challenge in this petition?** No

**15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?** No

**16. Give the name and address of each attorney who represented you in the following staged of the judgment you are challenging:**

**(a) At preliminary hearing:** Alexander Nossiff, 24 Chestnut St. Dover, NH 03820

**(b) At arraignment and plea:** Stephen White, 44-0 Dover Point Rd., Dover, NH 03820

**(c) At trial:** Stephen White, 44-0 Dover Point Rd., Dover, NH 03820

**(d) At sentencing:** Stephen White, 44-0 Dover Point Rd., Dover, NH 03820

**(e) On direct appeal:** Christopher Johnson, N.H. Appellate Defender, 10 Ferry St., Concord, NH 03301

**(f) In any post-conviction proceeding:** pro se

**(g) On appeal from any ruling against you in a post-conviction proceeding:** pro se

17. **Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?** No (Although the second sentence is merely suspended)

18. **TIMELINESS OF PETITION: If the judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.**

    I have been actively exhausting post-conviction remedies via a Motion for New Trial and Petition for Writ of Habeas Corpus and associated petitions for appellate review of the denial of each.

Wherefore, the petitioner asks that the Court grant the following relief:

VACATE the State convictions or in the alternative ORDER a new trial.

And any other relief to which the petitioner may be entitled.

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed into the United States postal system on April 15, 2015.

Executed (signed) on: April 15, 2015

David Fischer
620 Somerville St. 2F
Manchester, NH 03104

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2015 APR 16 P 12: 40

David Fischer
620 Somerville St. 2F
Manchester, NH 03104

Clerk of Court
United States District Court
55 Pleasant St.
Concord, NH 03301

1:15-cv-130-PB

Re: David Fischer v. N.H. Parole Board

April 15, 2015

Dear Clerk,

Enclosed please find for filing with the court the Original and two (2) copies of my Petition for Writ of Habeas Corpus along with a money order in the amount of $5.00 for the filing fee.

Thank you for your attention to this matter.

Sincerely,

David Fischer