**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

David Fischer

     v.                              Case No. 15-cv-130-PB

New Hampshire Adult Parole Board

**REPORT AND RECOMMENDATION**

After a jury trial in the New Hampshire Superior Court, David Fischer ("Fischer") was convicted "on two counts of second degree assault, both of which resulted in extended terms of imprisonment." State v. Fischer (Fischer I), 165 N.H. 706, 709 (2013) (citing N.H. Rev. Stat. Ann. ("RSA") §§ 631:2, I(c) & 651:6, II(a)).  Fischer now petitions for a writ of habeas corpus.  See 28 U.S.C. § 2254.  Before this magistrate judge for a report and recommendation are respondent's motion for summary judgment and a filing from Fischer captioned "Memorandum of Law in Support of Petition for Writ of Habeas Corpus and in Objection to Respondent's Motion for Summary Judgment."  For the reasons detailed below, respondent's motion for summary judgment should be granted.

**Background**

Fischer's convictions resulted from events that took place in the home he shared his wife, Tracy.[1]  In its opinion on Fischer's direct appeal, the New Hampshire Supreme Court ("NHSC") described those events this way:

> At 10 p.m. on February 18, 2010, the victim, the defendant's wife, returned to their home in Dover from her shift as a nurse at York Hospital.  She and the defendant argued.  She then removed her rings, threw them at him, and told him that she "couldn't do this any more."  In response, the defendant grabbed her by the throat, pushed her head into the wall behind her with such force that it dented the wall, threw her to the floor, and left the house.  . . .
>
> The defendant turned off the lights in the kitchen and went upstairs.  When the victim went from the living room into the kitchen and turned the lights back on, the defendant came downstairs, turned the lights off, and lunged at her.  He grabbed her from behind, put his hand over her mouth, and brought her to the floor.  Then he stepped on her head, preventing her from getting up.  He grabbed her by the hair and sweatshirt and dragged her into the living room.  The sweatshirt tightened around her neck so she could not breathe or speak.  . . .
>
> In the morning, the defendant apologized and said that he wanted "to fix things," but the victim said that she could not stay with him.  As she was leaving the house for work, the defendant charged at the door, slamming it on her finger.

Fischer I, 165 N.H. at 709.

---

[1] Fischer's indictments refer to his wife as "Tracy Fischer," while the transcript of his trial refers to her as "Tracy Loignon."  Unless it is quoting those documents, the court will refer to Fischer's wife as "Tracy."

Based upon the foregoing, Fischer "was indicted on three counts of second degree assault."  Fischer I, 165 N.H. at 710. One charge arose from the door-slamming incident.  The other charges arose from two incidents that took place the night before, which resulted in two separate indictments.  One of them charges that Fischer

> RECKLESSLY CAUSE[D] BODILY INJURY TO ANOTHER UNDER CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE IN THAT [HE] GRABBED TRACY FISCHER BY THE NECK, SLAMMED HER HEAD INTO A WALL AND THREW HER ONTO THE FLOOR, CAUSING CONTUSIONS AND MUSCLE STRAIN TO HER HEAD AND NECK, SUCH CONDUCT CONSTITUTING CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE.

The other indictment charges that Fischer

> RECKLESSLY CAUSE[D] BODILY INJURY TO ANOTHER UNDER CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE IN THAT [HE] KNOCKED TRACY FISCHER TO THE FLOOR, STEPPED ON HER HEAD AND DRAGGED HER BY HER HAIR AND SWEATSHIRT HOOD FROM THE KITCHEN INTO THE LIVING ROOM, CAUSING CONTUSIONS AND MUSCLE STRAIN TO HER HEAD AND NECK, SUCH CONDUCT CONSTITUTING CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE.

Fischer was tried on all three charges.

After the State rested its case, defense counsel moved to dismiss all three charges, on grounds that the State had not introduced sufficient evidence to carry its burden of proof. Judge Brown denied the motion.  The jury acquitted Fischer of the charge arising from the door-slamming incident, but found him guilty on the two other counts.  For each of his

convictions, Fischer was sentenced to an extended term of imprisonment, pursuant to RSA 651:6, II(a).

Fischer appealed his convictions, and was represented by counsel on appeal.  The NHSC described Fischer's claims of error this way:

> (1) the trial court erred in admitting testimony under the excited utterance hearsay exception; (2) the evidence was insufficient to prove that his conduct manifested extreme indifference to the value of human life; (3) the trial court erred in instructing the jury on extreme indifference to the value of human life; (4) the trial court violated his rights against double jeopardy by sentencing him on both second degree assault convictions; (5) the trial court erred in imposing extended terms of imprisonment; and (6) the trial court erred in failing to instruct the jury that it must unanimously find a specific bodily injury.

Fischer I, 165 N.H. at 709.

Notwithstanding the fact that he was represented by counsel, Fischer made several attempts to file pro se briefs in the NHSC, all of which were rebuffed.[2]

While Fischer's appeal was pending, he filed a motion for a new trial in the superior court.  In that motion, he claimed

---

[2] Specifically, he filed: (1) a pro se motion for leave to file a pro se supplemental brief; (2) a pro se supplemental brief; (3) a renewed pro se motion for leave to file a pro se supplemental brief; (4) a pro se motion for reconsideration of the denial of his renewed motion; (5) a pro se motion for leave to file a pro se reply brief; and (6) a pro se motion for reconsideration of the denial of his motion for leave to file a reply brief.  The NHSC denied all five of Fischer's motions and struck his supplemental brief.

that his trial counsel provided him with ineffective assistance

due to his:

> (1) fail[ure] to investigate the victim and interview
> witnesses; (2) failure to seek the victim's mental
> health record; (3) failure to seek timely discovery of
> text messages and phone records; (4) failure to seek
> production of the victim's work records; (5) failure
> to obtain a transcript of the victim's prior sworn
> testimony from a protection order hearing held on
> March 2, 2010; (6) failure to obtain the services of a
> pharmaceutical expert; (7) conceding guilt in [his]
> closing argument; (8) failure to clarify issues in the
> closing argument; and (9) failure to object to jury
> instructions.

Resp't's Mem. of Law (Doc. No. 12-1) 6.  Petitioner concurs with

respondent's characterization of the issues he raised in his

motion for a new trial.  Judge Wageling denied Fischer's motion,

and denied his motion for reconsideration.  Fischer appealed,

and the NHSC declined his appeal.

   After the NHSC affirmed his convictions, Fischer petitioned

the superior court for a writ of habeas corpus, asserting claims

of ineffective assistance of trial counsel and ineffective

assistance of appellate counsel.  With regard to trial counsel,

Fischer identified the following grounds:

> (1) failure to  move for a directed verdict based on
> the sufficiency of the evidence on the element of
> bodily injury; (2) failure to object to the trial
> court's instruction on bodily injury; (3) failure to
> object to the amendment of the indictments; (4)
> failure to request a unanimity instruction; (5)
> failure to move to exclude witness Schumaker's
> testimony as inadmissible hearsay; and (6) failure to
> ensure that jury was instructed that "extreme

> indifference to the value of human life" was a
> heightened form of ordinary recklessness.

Resp't's Mem. of Law (Doc. No. 12-1) 6-7.  With regard to

appellate counsel, he raised these grounds:

> (1) failure to challenge the trial court's instruction
> on bodily injury on appeal as plain error; (2) failure
> to challenge the amendment of the indictments on
> appeal; (3) failure to provide the state court with
> case law on the failure to give a unanimity
> instruction as plain error; and (4) failure to
> "properly argue" that [the] jury was instructed that
> "extreme indifference to the value of human life" was
> a heightened form of ordinary recklessness.

Id. at 7.  As with his motion for new trial, petitioner concurs

with respondent's characterization of the issues he raised in

his petition for a writ of habeas corpus in the state courts.

Judge Schulman denied the petition.  Fischer appealed, and the

NHSC declined his appeal.

This action followed.  In it, petitioner raises the twelve

claims described in the order on preliminary review, Document

No. 2.  Rather than reciting petitioner's claims here, en masse,

the court describes them individually, in the body of this

report and recommendation.

### The Legal Standard

A federal court may grant habeas corpus relief "only on the

ground that [a petitioner] is in custody in violation of the

Constitution or laws or treaties of the United States."  28

6

U.S.C. § 2254(a).  Moreover, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A). "Generally speaking, a petitioner's failure to exhaust all state remedies is 'fatal to the prosecution of a federal habeas case.'"  Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011)).  To exhaust the remedies available in state court, "a petitioner must have tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question."  Jaynes v. Mitchell, 824 F.3d 187, 192 (1st Cir. 2016) (quoting Sanchez, 753 F.3d at 294).  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Turning to the standard of review, the power of the federal courts to grant habeas corpus relief to state prisoners has been significantly limited by passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Under that statute, when a prisoner brings a claim in

federal court that "was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

> [f]ederal habeas relief may not be granted . . . unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, [28 U.S.C.] § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Harrington v. Richter, 562 U.S. 86, 100 (2011) (parallel citations omitted); see also Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015). As to the distinction between decisions that are contrary to federal law and those that involve an unreasonable application of such law, the Supreme Court has explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Taylor, 529 U.S. at 412-13. However, if a claim has not been adjudicated on the merits in state court, it is subject to de novo review. See Jaynes, 824 F.3d at 192 (citation omitted).

**Discussion**

I.    Claim One

Petitioner first claims that RSA 631:2, I(c), the second degree assault statute under which he was convicted, is unconstitutionally vague, in violation of the Fifth and Fourteenth Amendments.[3]  Petitioner first raised this issue in a pre-trial motion to dismiss.  That motion was denied, but the record appears to include no written ruling on it.  Fischer asserted the putative unconstitutionality of RSA 631:2, I(c) in his notice of appeal to the NHSC, but his appellate counsel did not brief that issue.  Thereafter, Fischer raised it in the pro se supplemental brief he attempted to submit to the NHSC.

Respondent argues that it is entitled to judgment as a matter of law on Claim One because: (1) Fischer waived it in the state courts; (2) the claim involves only the interpretation of a state statute, which is not the proper subject of federal habeas review; (3) the claim is unexhausted; and (4) the claim fails on the merits.

Respondent's first argument lack merit.  As Judge McAuliffe has explained:

---

[3] The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  The Fourteenth Amendment applies the requirements of the Fifth Amendment to the states.  See U.S. Const. amend. XIV, § 1.

> A habeas petitioner can fail to exhaust a claim by
> waiving it.  Or, a claim may be procedurally defaulted
> when a state court determines that a criminal
> defendant has waived it.  But saying that a claim has
> been "waived," without discussing exhaustion or
> procedural default, does not advance a meritorious
> argument.

Haniffy v. Gerry, No. 08-cv-268-SM, 2010 WL 1462346, at *1

(D.N.H. Apr. 12, 2010) (footnote omitted).

In its second argument, respondent relies upon Estelle v.

McGuire, which excluded from federal habeas review an inquiry

into whether certain "evidence was incorrectly admitted pursuant

to California law," 502 U.S. 62, 68 (1991) (internal quotation

marks and ellipsis omitted).  But Claim One does not involve a

determination of whether the trial court followed New Hampshire

law; it is a claim that a New Hampshire statute violates the

United States Constitution.  Thus, Estelle is of no help to

respondent.

Turning to exhaustion, respondent argues that the manner in

which Fischer tendered his vagueness claim in his pro se

supplemental brief to the NHSC was insufficient to adequately

present a federal constitutional claim to that court.  Assuming,

without deciding, that presentation of an issue in a brief that

was stricken by the NHSC counts as presentation for the purposes

of exhaustion, which respondent appears to concede, Fischer

adequately presented his federal claim to the NHSC.  In his

brief, he relied upon a quotation from State v. Saucier, 128 N.H. 291, 296-97 (1986), which articulates a legal standard concerning vagueness that is virtually identical to the constitutional standard stated by the U.S. Supreme Court in FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307, 2317 (2012). That was sufficient to exhaust the state court remedies available for redressing the issue on which Claim One is based. See Sanchez, 753 F.3d at 294 (describing various ways in which exhaustion requirement may be met).[4]

Because respondent's first three arguments are all unavailing, the court turns to the merits.

---

[4] In Sanchez, the court of appeals explained that a habeas petitioner may satisfy the exhaustion requirement in several ways,

> including "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Coningford, 640 F.3d at 482.  In addition, "citations to state court decisions which rely on federal law or articulation of a state claim that is, 'as a practical matter, [ ] indistinguishable from one arising under federal law' may suffice to satisfy the exhaustion requirement." Clements [v. Maloney], 485 F.3d [158,] 162 [(1st Cir. 2007)] (alteration in original) (quoting Nadworny v. Fair, 872 F.2d 1093, 1099-1100 (1st Cir. 1989)).

753 F.3d at 294.

As a preliminary matter, respondent's brief is silent on the standard of review for Claim One.[5]  Petitioner's brief follows suit.[6]  Given petitioner's contention that he exhausted the issue he presents in Claim One by including it in his pro se supplemental brief, the NHSC's refusal to accept that brief, in reliance upon State v. Belton, 150 N.H. 741, 750 (2004), would appear to be a decision on the merits, engendering the highly deferential AEDPA standard of review.  However, the state court's rejection of petitioner's vagueness challenge even survives de novo review.

The court begins its discussion by stating the relevant legal principles:

> A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. See Connally v. General Constr. Co., 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the

---

[5] Indeed, respondent identifies no standard of review for any of petitioner's first four claims.

[6] In addition, like respondent, petitioner identifies no standard of review for Claim Four.  Moreover, while he does identify standards of review for Claims Two and Three, the standards he identifies are not those applicable to habeas review but, rather, are standards applicable to state-court appellate review of trial court rulings.  The reason for that is self-evident: petitioner's objection to respondent's motion for summary judgment consists largely of passages drawn, verbatim, from various pleadings petitioner has previously filed in either the superior court or the NHSC.

first essential of due process of law"); <u>Papachristou v. Jacksonville</u>, 405 U.S. 156, 162 (1972) ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids'" (quoting <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453 (1939) (alteration in original))).  This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.  <u>See</u> <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008).  It requires the invalidation of laws that are impermissibly vague.  A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  <u>Ibid.</u>

<u>Fox Television</u>, 132 S. Ct. at 2317 (parallel citations omitted).

The criminal statute under which Fischer was convicted, and that he now challenges as unconstitutionally vague, provides that "[a] person is guilty of a class B felony if he . . . [r]ecklessly causes bodily injury to another under circumstances manifesting extreme indifference to the value of human life." RSA 631:2, I(c).  According to petitioner, RSA 631:2, I(c) is unconstitutionally vague because it includes two distinct states of mind, "recklessness" and "extreme indifference to the value of human life."  Claim One fails because even if a criminal statute identifying two states of mind is unconstitutionally vague, RSA 631:2, I(c) does not include two distinct states of mind.

In State v. Dufield, 131 N.H. 35 (1988), the NHSC was called upon to construe RSA 630:1-b, I(b), which provides that a "[a] person is guilty of murder in the second degree if . . . [h]e causes [the] death [of another] recklessly under circumstances manifesting an extreme indifference to the value of human life."  In its decision in Dufield, the NHSC rejected the defendant's argument that "indifference" was "an element of an offense comparable to a knowing or purposeful state of mind." 131 N.H. at 37.  Rather, the court held that

> the function of proving the existence of "circumstances manifesting extreme indifference" is to establish, not a subjective state of mind, but a degree of divergence from the norm of acceptable behavior even greater than the "gross deviation" from the "law-abiding" norm, by which reckless conduct is measured [such that] the words in question would describe a way of objectively measuring such a deviation.

Id. (emphasis added).  Because the NHSC has held that the phrase "under circumstances manifesting extreme indifference" does not denote a mental state, RSA 631:2, I(c) does not include two distinct states of mind a defendant must possess.  Because the purported ambiguity upon which Claim One rests does not exist, Claim One necessarily fails.

## II.  Claim Two

Petitioner's second claim is that the trial court violated his constitutional rights, under the Fifth, Sixth, and

Fourteenth Amendments, by giving a jury instruction that failed to fairly, adequately, and accurately, explain two elements of second degree assault: "recklessly" and "under circumstances manifesting extreme indifference to the value of human life." In his notice of appeal, Fischer challenged the trial court's decision not to give the instruction he had requested on the elements of RSA 631:2, I(c), and also challenged, on constitutional grounds, the instruction the court did give.  The brief that Fischer's appellate counsel submitted to the NHSC includes an argument that the trial court erroneously instructed the jury on one element of second degree assault: "under circumstances manifesting extreme indifference to the value of human life."  Fischer also challenged the trial court's jury instructions in the pro se supplemental brief he attempted to submit to the NHSC.  In that brief, he framed an argument that focused on the interrelationship between "recklessness" and "extreme indifference" and built on his misapprehension that those two elements describe two different states of mind.

Respondent argues that it is entitled to judgment as a matter of law on Claim Two because: (1) Fischer waived it in the state courts; (2) the claim involves only the interpretation of state law; (3) the claim is unexhausted; and (4) the claim fails on the merits.  The court proceeds to the merits, see 28 U.S.C.

§ 2254(b)(2), and reviews Claim Two <u>de novo</u>.

When he instructed the jury, Judge Brown explained the elements of second degree assault in the following way:

> [T]he remaining two charges . . . of second degree assault involving extreme indifference have three parts or elements. . . .

> [T]he State must prove the following beyond a reasonable doubt.  That the Defendant caused bodily injury to another person and the bodily injury was inflicted under circumstances manifesting extreme indifference to the value of human life.  And the Defendant acted recklessly.

> Now, you already have the definition of recklessly.  I gave it to you a moment ago.  That definition, and all of its subparts, applies to these two charges.[7]

---

[7] This is the definition of "recklessly" that the judge had previously given the jury:

> To prove the Defendant acted recklessly, the State must prove first that the Defendant was aware of a substantial and unjustifiable risk.

> This means there must be proof that the Defendant knew that there was a substantial risk that his conduct would cause a particular result.

> Second, if the Defendant was aware of the risk, there must be proof that the Defendant consciously disregarded the risk.  In other words, the Defendant decided to disregard the risk and took a chance of doing certain acts that a particular result would occur.

> Third, you must examine the circumstances known to the Defendant.  From what he knew of the circumstances, you must decide whether his disregard of the risk was a gross deviation from what the law-abiding person would have done.

> Now, to act under circumstances manifesting
> extreme indifference to the value of a human life
> means that the Defendant's acts demonstrate a blatant
> disregard for the risk to . . . Tracy Loignon's life.
> It's not necessary that the injury – or a series of
> injuries themselves be life-threatening.

Trial Tr. (Dec. 8, 2010) 159:23 – 160:15.

Petitioner's claim, as set out in the brief his appellate

counsel submitted to the NHSC, is that the trial court erred by

failing to give the following instruction:

> [P]roof of extreme indifference to the value of human
> life requires more than a demonstration that the
> Defendant had created and disregarded a substantial
> risk of death.  "Extreme indifference to the value of
> human life" requires proof beyond a reasonable doubt
> of a "blatant disregard" of a substantial and
> [un]justifiable risk of death.

The NHSC disagreed, "find[ing] no error in the trial court's

instructions," Fischer I, 165 N.H. at 714, and noting that the

trial court's instruction "mirrored the language that [it had]

approved regarding the requirements for second degree assault,"

id. (citing State v. Fletcher, 129 N.H. 641, 644 (1987); State

v. Bailey, 127 N.H. 416, 424 (1985)).

Having outlined the factual basis for Claim Two, the court

turns to the governing law:

> "Instructions in a state trial are a matter of state
> law to which substantial deference is owed." Niziolek
> v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982).  "Because
> federal habeas relief does not lie for errors of state

---

Trial Tr. (Dec. 8, 2010) 158:19 – 159:8.

> law, federal habeas review of a state court's
> application of [state law] is limited, at most, to
> determining whether the state court's finding was so
> arbitrary or capricious as to constitute an
> independent due process . . . violation." Lewis v.
> Jeffers, 497 U.S. 764, 780 (1990).
>
> "Before a federal court may overturn a conviction
> resulting from a state trial [because of an erroneous
> jury instruction], it must be established not merely
> that the instruction is undesirable, erroneous, or
> even 'universally condemned,' but that it violated
> some right which was guaranteed to the defendant by
> the Fourteenth Amendment." Cupp v. Naughten, 414 U.S.
> 141, 147 (1973). . . . To establish a due process
> violation, the petitioner must show that the allegedly
> defective jury instruction "so infected the entire
> trial that the resulting conviction violates due
> process." [Estelle, 502 U.S. at 72].

Lucien v. Spencer, No. CA07-11338-MLW, 2015 WL 5824726, at *11-

12 (D. Mass. Sept. 30, 2015).  A jury charge can violate a

criminal defendant's right to due process if the instructions

given to the jury, when viewed as a whole, see Cupp, 414 U.S. at

146-47, do not require "[t]he government [to] prove beyond a

reasonable doubt every element of a charged offense," Victor v.

Nebraska, 511 U.S. 1, 5 (1994) (citing In re Winship, 397 U.S.

358, 364 (1970)).  Thus, jury instructions can violate a

criminal defendant's right to due process if they: (1) shift the

burden of proof from the prosecution to the defendant, see Cupp,

414 U.S. at 148; or (2) lower the prosecution's burden of proof

to something less than beyond a reasonable doubt, see id. at

147-48.

Petitioner's claim is that the jury charge in his case was constitutionally infirm because the trial court incorrectly instructed the jury on the elements: "recklessly" and "under circumstances manifesting extreme indifference to the value of human life," RSA 631:2, I(c).  Petitioner's argument on this point, which largely follows the argument in his pro se supplemental brief, consists of a lengthy discourse comparing and contrasting the elements of six different criminal statutes, with a focus on the mental state required for each.  That discourse, however, appears to be premised on petitioner's misapprehension that the "extreme indifference" element of second degree assault is directed to the mental state necessary to prove that offense.  Petitioner, however, fails to recognize that "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief," Estelle, 502 U.S. at 71-72 (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)).  Even if the trial court gave an instruction that misstated New Hampshire law, and the NHSC erroneously affirmed the trial court on this issue, that would not entitle Fischer to habeas relief.  See id.

Petitioner attempts to evade the rule of Estelle by arguing that improperly instructing the jury on an element of an offense is analogous to omitting an element, and that the disputed

instruction is sufficiently erroneous to count as a constructive omission that deprived him of due process.  The court does not agree.  In the Supreme Court opinion on which petitioner relies, the Court pointed out that on direct review, the omission of an element from a jury instruction is subject to harmless-error analysis because "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."  Neder v. United States, 527 U.S. 1, 9 (1999) (emphasis omitted).  Neder eviscerates any claim that the jury instructions that petitioner challenges in Claim Two deprived him of due process.

In light of the rule stated by the Supreme Court in Estelle, Claim Two fails.

III. Claim Three

Petitioner's third claim is that both the prosecutor and the trial court violated his rights under the Fifth and Fourteenth Amendments by telling the jury that Tracy's testimony did not need to be corroborated.  Fischer asserted this claim in his notice of appeal to the NHSC, but his appellate counsel did not brief it.  Thereafter, Fischer raised the issue in the pro se supplemental brief he attempted to submit to the NHSC.

Respondent argues that it is entitled to judgment as a matter of law on Claim Three because: (1) Fischer waived it in the state courts; (2) the claim involves only a matter of state law; (3) the claim is unexhausted; and (4) the claim fails on the merits because there is no authority for the proposition that Tracy's testimony required corroboration and because Tracy's testimony was, in fact, corroborated. Again, the court proceeds directly to the merits, and reviews this claim de novo.

Claim Three arises from the following statements by the prosecution during its closing argument:

> Now the Judge is going to tell you that the law in New Hampshire says that the victim's testimony does not need to be corroborated. . . .
>
> . . . .
>
> Tracy came in here and she told you what the Defendant did to her. And as I indicated, the Judge is going to tell you that that, in and of itself, is enough evidence to convict the Defendant.
>
> . . . .
>
> [I]f you find Tracy's testimony is credible – in other words, if you believe her testimony, then you can convict the Defendant without any additional evidence.

Trial Tr. (Dec. 8, 2010) 134:11-13, 135:20-23, 137:16-19.

Thereafter, the trial judge gave the following instruction:

> The law does not require that the testimony of the alleged victim be corroborated. This means that if you find the alleged victim's testimony is credible – in other words, if you believe her testimony, then you may return a verdict of guilty without additional

evidence.

Trial Tr. (Dec. 8, 2010) 155:13-17.

Petitioner's claim goes like this: (1) New Hampshire's sexual assault statute provides that "[t]he testimony of the victim shall not be required to be corroborated in prosecutions under this chapter," RSA 632-A:6, I; (2) he was not charged with sexual assault under RSA ch. 632-A; and (3) because he was not tried on a charge of sexual assault, RSA 632-A:6, I, did not apply to his case.  As the court has already noted, "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief," Estelle, 502 U.S. at 71-72 (citation omitted).[8]  For that reason, and because Claim Three includes no assertion that the disputed jury instruction impermissibly shifted or lowered the prosecution's burden of proof, see Cupp, 414 U.S. at 147-48, Claim Three fails.

IV.  Claim Four

Petitioner's fourth claim is that the trial court violated his constitutional rights, under the Fifth, Sixth, and Fourteenth Amendments, by admitting the testimony of witness

---

[8] Although it has no need to opine on the correctness of the jury instruction petitioner challenges, the court notes that there is nothing in either New Hampshire law or the U.S. Constitution that would preclude a jury from convicting a criminal defendant on the uncorroborated testimony of a victim.

Kristin Busch concerning statements that Tracy made to her under the "excited utterance" exception to New Hampshire's hearsay rule.  Respondent argues that it is entitled to judgment as a matter of law on Claim Four because: (1) Fischer waived it in the state courts; (2) the claim involves only a matter of state law; (3) the claim is unexhausted; and (4) the claim fails on the merits.  Again, the court proceeds directly to the merits, and reviews this claim de novo.

At trial, the jury heard testimony from Busch.  Among other things, Busch testified about a telephone conversation she had with Tracy at some point after the third incident giving rise to the charges against Fischer.  The trial court admitted that testimony under the "excited utterance" exception to New Hampshire's hearsay rule.  See N.H. R. Evid. 803(2).  On appeal, the NHSC ruled that Busch's testimony was inadmissible, see Fischer I, 165 N.H. at 711, but held that the trial court's error in admitting it was harmless, "[b]ecause the alternative evidence of the defendant's guilt was overwhelming and because the contested evidence was inconsequential and cumulative," id. at 712.  The court elaborated:

> The victim provided a graphic account of the assault
> in the living room.  She also described in detail the
> assault in the kitchen.  The officer who interviewed
> the victim at the Dover police station testified that
> she had a mark on the left side of her neck and a
> bruise on the back of her shoulder.  Photographs of

23

the victim's injuries and the dent in the wall were
admitted as exhibits at trial.  The nurse who examined
the victim at the Wentworth-Douglass Hospital
emergency room testified that the victim told her that
she had been assaulted by her husband on the previous
night, and that during the assault she was pushed to
the floor, stepped on, and choked.  The nurse noted
bruising on the victim's back near her shoulder blade,
tenderness in her neck, tenderness on the back of her
head, and swelling, tenderness, and bruising on her
finger — injuries that the nurse testified were
consistent with the victim's description of the
assaults.

Id.

Turning to the relevant legal principles, the "[v]iolation

of a rule of evidence, without more, is not enough to warrant

federal habeas review."  Parkhurst v. Warden, NH State Prison,

No. 09-cv-240-PB, 2011 WL 5330781, at *9 (D.N.H. Nov. 7, 2011)

(citing Evans v. Verdini, 466 F.3d 141, 145 (1st Cir. 2006)).

However:

An erroneous evidentiary ruling that results in a
fundamentally unfair trial may constitute a due
process violation and thus provide a basis for habeas
relief.  See Coningford v. Rhode Island, 640 F.3d 478,
484 (1st Cir. 2011).  However, to give rise to habeas
relief, "the state court's application of state law
must be 'so arbitrary or capricious as to constitute
an independent due process . . . violation.'"  Id.
(quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).
"To be a constitutional violation, a state evidentiary
error must so infuse the trial with inflammatory
prejudice that it renders a fair trial impossible."
Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir.
2005); see also Kater [v. Maloney], 459 F.3d [56,] 64
[(1st Cir. 2006)] (in habeas context, relevant inquiry
on appeal regarding evidentiary claim of error is
"whether any error rendered the trial so fundamentally
unfair that it violated the Due Process Clause").

24

Lyons v. Brady, 666 F.3d 51, 55–56 (1st Cir. 2012) (parallel citations omitted).

In his memorandum of law, petitioner does not cite Lyons or any other authority describing the legal standard set forth in that decision.  Rather, on state law grounds, he challenges the NHSC's determination that the admission of Busch's testimony was a harmless error.  He does so by focusing on the NHSC's reference to testimony from the emergency-room nurse, and arguing that the nurse's testimony was also inadmissible hearsay.  He concludes: "[T]he improper admission of both Busch's and [the nurse's] testimony affected the fundamental fairness of the trial below in violation of [his] right to a fair trial."  Pet'r's Mem. of Law (Doc. No. 16) 27.

Even if the nurse's testimony was admitted in violation of the New Hampshire Rules of Evidence – a claim that Fischer seems never to have presented to the NHSC, and a matter on which this court offers no opinion – the court cannot say that the admission of both Busch's testimony and the nurse's testimony made a fair trial impossible, which is the applicable legal standard.  See Lyons, 666 F.3d at 56.  That is, given all the other evidence against Fischer, any prejudice that may have resulted from the admission of the evidence at issue was minimal, at best.  Accordingly, petitioner has not established a

violation of his right to due process based upon the evidentiary
ruling(s) on which Claim Four is based.  Accordingly, Claim Four
fails.

V.    Claim Five

Petitioner's fifth claim is that the trial court violated
his rights under the Fifth, Sixth, and Fourteenth Amendments by
preventing defense counsel from eliciting testimony concerning
Tracy's medications and their side effects.  Fischer's notice of
appeal made no mention of such testimony, and in his pro se
supplemental brief, he addressed this issue as a matter of New
Hampshire evidentiary law.

Respondent argues that it is entitled to judgment as a
matter of law on Claim Five because: (1) Fischer waived it in
the state courts; (2) the claim involves only a matter of state
law; (3) the claim is unexhausted; and (4) the claim fails on
the merits.  The absence of the issue underlying Claim Five from
Fischer's notice of appeal would likely support an argument that
Claim Five was procedurally defaulted.  See Pike v. Guarino, 492
F.3d 61, 73 (1st Cir. 2007) (explaining that "a claim is
procedurally defaulted if it was not presented to the state
courts and it is clear that those courts would have held the
claim procedurally barred"); Dupont v. N.H. Real Estate Comm'n,
157 N.H. 658, 662 (2008) (explaining that issues not raised in

26

notice of appeal are "not properly preserved and are deemed waived") (citing State v. Martin, 145 N.H. 313, 315 (2000)). While respondent argues in passing that petitioner waived the issue underling Claim Five on direct appeal, it does not invoke the doctrine of procedural default and invites the court to review Claim Five de novo.  The court accepts that invitation. See Barbosa v. Mitchell, 812 F.3d 62, 68 (1st Cir. 2016) ("We will therefore accept the State's invitation to ignore Barbosa's own default, and consider the merits of his belated challenge to the admission of Delatore's results table and Lynch's recitation of Delatore's findings.").

Claim Five arises from a ruling made at sidebar during defense counsel's cross-examination of Tracy, after the State objected to the following question: "Now, you're on certain medication, aren't you?"  Trial Tr. (Dec. 7, 2010) 72:18.  In response to the State's objection, defense counsel explained that "the medication she's on has a tendency to thin the blood and . . . make a person susceptible to bruising."  Id. 72:24 - 73:1.  Defense counsel went on to indicate that he intended to get into the side effects of Tracy's medication through a doctor that the State was going to call.  Judge Brown ruled:

> I don't understand how you can get into the effects of
> the medications vis-à-vis bleeding and bruising
> without an expert, and without a notice of that issue
> at all . . . unless the door is opened . . . .  I'm

not going to allow you to . . .

. . . .

For the record, if you want to find out, <u>you can ask
her what medications she's on; that's fine</u>, . . . but
you're not going to be asking her [about] the effects
of that –

. . . .

<u>You may ask what she's on for her rheumatoid
arthritis.</u>

<u>Id.</u> 74:11 – 75:6 (emphasis added).  While defense counsel asked

Tracy whether she took medication for her rheumatoid arthritis,

he did not ask her to identify the medication she was taking.

Consequently, he never asked the doctor the State called about

the side effects of Tracy's medications.

Based upon the foregoing, petitioner mounts the following

argument:

Trial counsel attempted to elicit testimony from
Tracy about medications she regularly took to
establish a foundation for admission of evidence that
said medications, Humira and Methotrexate, have the
side-effects of "bruising easily" (Humira) and
"unusual bleeding or bruising" (Methotrexate).

. . . [A] reasonable, alternative explanation for
the bruises Tracy clamed [<u>i.e.</u>, her medications] . . .
was highly relevant and probative of her credibility
and to the question of whether she suffered the
injuries alleged in the indictments.

Ultimately, the lower court ruled that trial
counsel could not question Tracy about her
medications, or the side-effects thereof, without an
expert witness.  This was error.

Pet'r's Mem. of Law (Doc. No. 16) 27 (citations to the record
omitted).  Petitioner goes on to argue that, under New
Hampshire's rules of evidence, information about the side
effects of Tracy's medications was admissible, in the form of
drug information sheets or entries from the Physician's Desk
Reference ("PDR").  According to petitioner:

> Both the drug information sheets and the PDR
> should have been admissible under Rule 803(17) and
> trial counsel should have been allowed to lay the
> foundation for this evidence by questioning Tracy as
> to the medications she regularly took, but was
> prevented by the trial court from doing either.
>
> Had trial counsel not been improperly precluded
> from laying the foundation for admission of the
> medications Tracy regularly took the drug information
> sheets and the PDR would also have been admissible
> under N.H. R. Ev. 803(18).

Id. at 28.

As the court has previously explained, evidentiary rulings
by a state trial court are not generally subject to habeas
review.  See Parkhurst, 2011 WL 5330781, at *9.  That said,
Claim Five fails for an antecedent reason: defense counsel was
not prevented from asking Tracy what medications she took.  To
the contrary, Judge Brown expressly ruled that counsel could ask
Tracy what she was taking for her rheumatoid arthritis.
Counsel, however, did not make that inquiry.  As a result,
counsel had no occasion to ask any other witness about the side
effects of Tracy's medications.  Moreover, while petitioner now

argues that both drug information sheets and the PDR are admissible under the New Hampshire Rules of Evidence, that provides no basis for a claim of error by the trial court, because defense counsel never even attempted to introduce either form of evidence into the record.  In short, because of its faulty factual premise, Claim Five is entirely unavailing.

VI.  Claim Six

Petitioner's sixth claim is that the trial court violated his rights under the Fifth and Fourteenth Amendments by declining to find that the trial evidence was insufficient to establish, beyond a reasonable doubt, the element of "bodily injury," where he was indicted for causing contusions and muscle strains but the State only introduced evidence of one contusion. In his notice of appeal, Fischer challenged the sufficiency of the State's evidence on two of the three elements of second degree assault, but not the issue of bodily injury.  In his pro se supplemental brief he raised the issue, but as a matter of New Hampshire law.

Respondent argues that it is entitled to judgment as a matter of law on Claim Six because: (1) Fischer waived it in the state courts; (2) the claim involves only a matter of state law; (3) the claim is unexhausted; and (4) the claim fails on the merits.  As with Claim Five, there is an argument to be made

that Claim Six has been procedurally defaulted, but respondent
makes no such an argument and invites the court to review Claim
Six de novo.  Again, the court accepts respondent's invitation.

As construed by this court in its order on preliminary
review, the gravamen of Claim Six is that the trial court erred
by ruling that the State had introduced sufficient evidence for
a reasonable jury to find, beyond a reasonable doubt, that
Fischer had inflicted contusions and muscle strains on Tracy.
In petitioner's memorandum of law, which mirrors the pro se
supplemental brief he filed in the NHSC, Claim Six is somewhat
broader, and asserts that the trial court erred by determining
that: (1) bruising and muscle strain qualify as bodily injury in
the first instance; and (2) the State had introduced sufficient
evidence for a reasonable jury to find, beyond a reasonable
doubt, that Fischer had caused contusions (and muscle strains)
to Tracy's head and neck.  Even giving petitioner the benefit of
this broader construction of Claim Six, the claim fails.

The first part of Claim Six incorporates a challenge to
Judge Brown's instruction that "bodily injury is any harm,
however slight, to the body of another person."  Trial Tr. (Dec.
8, 2010) 161:13-14.  According to petitioner, "[t]here is no
State statutory law that substantiates this definition and this
definition is contrary to the court's case law."  Pet'r's Mem.

31

of Law (Doc. No. 16) 32 (citing In re Juvenile 2002-209, 149

N.H. 559, 564 (2003)).   In petitioner's view, the injuries

charged in the indictment do not, as a matter of law, qualify as

"bodily injury" for the purposes of RSA 631:2, I(c), under a

proper definition of "bodily injury."

The jury-instruction component of Claim Six fails because

it posits an error of state law, but does not rest upon a

purported error of constitutional dimension such as shifting the

burden of proof away from the prosecution or lowering the burden

to proof to something less than beyond a reasonable doubt.   See

Cupp, 414 U.S. at 147-48.   That compels the court to reject the

first part of Claim Six.[9]

The second part of Claim Six is a challenge to the

sufficiency of the evidence supporting petitioner's convictions.

As Judge DiClerico has recently explained

When a [§ 2254] petitioner challenges the sufficiency

---

[9] Beyond that, petitioner does not appear to offer any basis
for a determination that the instruction he challenges runs
afoul of state law.  All of the NHSC opinions upon which he
relies for the definition of "bodily injury" he says the trial
judge should have given are from cases interpreting RSA 169-C:3,
II(d), which is part of the definition section of the New
Hampshire Child Protection Act.  See In re Juvenile 2002-209,
149 N.H. at 563-64; In re Ethan H., 135 N.H. 681, 683 (1992); In
re Doe, 132 N.H. 270, 277 (1989)).  But petitioner offers no
authority for the proposition that the trial judge should have
based his instruction on the "bodily injury" element of second
degree assault on judicial constructions of the physical injury
component of the Child Protection Act's definition of "abused
child."

of the evidence to support his conviction, "the
relevant question is whether, after viewing the
evidence in the light most favorable to the
prosecution, <u>any</u> rational trier of fact could have
found the essential elements of the crime beyond a
reasonable doubt."

<u>McGrath v. Warden, N.H. State Prison</u>, No. 14-cv-353-JD, 2016 WL
3945159, at *8 (D.N.H. July 19, 2016) (quoting <u>Jackson v.</u>
<u>Virginia</u>, 443 U.S. 307, 319 (1979)) (emphasis in <u>Jackson</u>).

Petitioner claims that the trial court erred by ruling that
"the State presented sufficient evidence of 'contusion<u>s</u>,'
bruise<u>s</u> or black-and-blue mark<u>s</u> to Tracy's 'head <u>and</u> neck.'"
Pet'r's Mem. of Law (Doc. No. 16) 32 (emphasis in the original).
More specifically, he claims that while the State introduced
evidence of one bruise on Tracy's back, it did not introduce
evidence of multiple contusions to Tracy's head and neck, as
charged in the indictment.  At trial, a nurse practitioner who
examined Tracy later in the day of the door-slamming incident
testified that he diagnosed Tracy with, among other things,
"abrasion<u>s</u> and contusion<u>s</u> of her <u>neck</u> and back, <u>and her head</u> as
well."  Trial Tr. (Dec. 8, 2010) 79:13-14.  That, obviously, is
evidence that Tracy had suffered the injuries charged in the
indictment.  To be sure, defense counsel cross-examined the
nurse practitioner regarding what he saw when he examined
Tracy's head and neck, but the fact remains that he testified
that Tracy "had some . . . abrasions and contusions of her neck

33

and back, and her head as well." Id. 79:12-14.  That is not

all.  The jury heard testimony from Tracy that Fischer: (1)

"grabbed her by the throat," Fischer I, 165 N.H. at 709; (2)

"pushed her head into [a] wall . . . with such force that it

dented the wall," id.; (3) "stepped on her head," id.; and (4)

"grabbed her by the hair and sweatshirt and dragged her into the

living room" with such force that "[t]he sweatshirt tightened

around her neck so she could not breath or speak," id.  Tracy's

testimony is circumstantial evidence from which a reasonable

jury could have found that as a result of Fischer's actions, she

suffered contusions and muscle strain to her head and neck.

Had there been no evidence of abrasions and contusions to

Tracy's head and neck then, perhaps, the second part of Claim

Six might have merit.  But in light of the testimony from both

the nurse practitioner and Tracy herself, a rational trier of

facts could have found that the State proved the specific

injuries alleged in the indictment.  Accordingly, like the first

part of Claim Six, the second part of that claim fails.

VII.  Claim Seven

Petitioner's seventh claim is that the evidence and jury

instructions constructively amended his indictments, in

violation of his rights under the Fifth, Sixth, and Fourteenth

Amendments.[10]  Specifically, petitioner claims that while he was indicted for causing contusions and muscle strains to Tracy's head and neck, the State only introduced evidence of a single bruise to Tracy's back, and thus

> the jury was allowed to consider a single bruise to Tracy's back in determining whether [he] was guilty of the charges alleging that he caused "contusions" to Tracy's "head and neck," [which] impermissibly, constructively amended the indictment and allowed the jury to convict [him] for causing a form of bodily injury not alleged in the indictment.

Pet'r's Mem. of Law (Doc. No. 16) 43.[11]  Respondent argues that it is entitled to judgment as a matter of law on Claim Seven because: (1) Fischer waived it in the state courts; (2) the claim involves only a matter of state law; and (3) the claim is unexhausted.

---

[10] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation [against him."

[11] Petitioner also states Claim Seven in a slightly different way:

> [T]he State's closing argument and the court's jury instructions did not limit the jury to considering only evidence of the injuries charged in the indictment, i.e. "contusions and muscle strain in [Tracy's] head and neck."  Rather, both the State's [closing] argument and the court's [jury] instructions impermissibly expanded the indictment by allowing the jury to consider evidence of a single bruise to Tracy's back that was not charged in the indictment.

Pet'r's Mem. of Law (Doc. No. 16) 43.

Claim Seven fails for the same reason as Claim Six. Because the State introduced both direct and circumstantial evidence of contusions to Tracy's head and neck, it is not accurate to say that the trial court allowed the jury to base Fischer's convictions upon evidence of injuries that were not charged in the indictment. Moreover, petitioner does not argue that the trial court's admission of evidence of an injury not mentioned in the indictment, i.e., the bruise on Tracy's back, so infused the trial with inflammatory prejudice that a fair trial was impossible. See Lyons, 666 F.3d at 56. In sum, Claim Seven fails.

VIII.    Claim Eight

Petitioner's eighth claim is that the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments by failing to inquire as to the potential taint of witness testimony caused by violations of the court's sequestration order, after defense counsel brought those violations to the court's attention. Fischer raised this issue in his notice of appeal, and while his appellate counsel did not brief it, he included it in his pro se supplemental brief.

Respondent argues that it is entitled to judgment as a matter of law on Claim Eight because: (1) Fischer waived it in the state courts; (2) the claim involves only a matter of state

law; and (3) the claim fails on the merits.   As with several of

petitioner's other claims, the court proceeds directly to the

merits, and reviews Claim Eight de novo.

Claim Eight arises from the following events.   On the first

day of trial, the State made "a formal motion to sequester the

witnesses."   Trial Tr. (Dec. 7, 2010) 6:1-2.   Defense counsel

did not object.   Judge Brown granted the motion, but when he did

so, there were no witnesses in the courtroom, because the

prosecutor had already instructed them about the sequestration

order she anticipated the court would issue.   On the first day

of trial, the State called three witnesses: Tracy, Busch, and

Pamela Damrill.   Petitioner does not claim that any witness

heard the testimony of any other witness.   However, after each

witness testified, the judge excused her without mentioning his

sequestration order.

At the start of the second day of trial, the following

exchange took place among defense counsel (Mr. White), the

prosecutor (Ms. Flynn), and Judge Brown:

> MR. WHITE:  . . .  It has been reported to me
> that when one witness finished [testifying on the
> previous day] . . . they went out and had a discussion
> about what questions were asked.  Answers weren't
> overheard, but one of the other State's witnesses
> overheard them begin conversations about the questions
> that were asked and stuff, and then the door was shut.
>
> So I think that's a violation of the request by
> the State for sequestration and –

MS. FLYNN:  Your Honor –

MR. WHITE:  – should be inquired into.

MS. FLYNN:  – this is the first I'm hearing of
this.  I –

THE COURT:  You're going to have to do –

MS. FLYNN:  It was brought to my attention
yesterday –

THE COURT:  – something more formal than that on
it.  I mean this is secondhand, third.  I want –
you're going to have to have witnesses and things like
that, and it's going to have to – it's going to have
to be of some – I want you to find – of substantive
nature.  I'm not going to be –

MR WHITE:  The witness is here.

THE COURT:  – and if the State's – if the State
has no hand in it, I'm not so sure that there's any
violation.  But I want – I need to know more.  We'll
take it up later.

MR. WHITE:  Fine, Your Honor.  But the witness is
here, so – it's a State's witness that is mentioning
that.

. . . .

THE COURT:  Attorney Flynn, just make sure that
you instruct the witnesses that they can't speak with
one another on the way out.

Trial Tr. (Dec. 8, 2010) 13:9 – 14:16.  Notwithstanding Judge

Brown's suggestion that he do so, defense counsel did not raise

the issue again.

In his memorandum of law, petitioner asserts that "the

trial judge refused to inquire into what impact the possible

38

collaboration and relaying of information by the State's witnesses about testimony and questions asked had on the trial," Pet'r's Mem. of Law (Doc. No. 16) 47, and on that basis, he claims that his "rights under the 5th, 6th and 14th Amendments were violated where the trial court failed to further inquire into allegations that sequestered witnesses had been comparing testimony after each testified," id. at 46.  Petitioner's claim rests on a premise that is flatly unsupported by the trial record.  The trial judge did not refuse to inquire into the possible violation of his sequestration order by witnesses for the State.  Rather, he indicated his willingness to consider the issue in response to a more formal request from defense counsel. Defense counsel made no such request.  Petitioner identifies no legal authority for the proposition that the trial judge was required to do anything more than he did, and the court is aware of none.  Accordingly, Claim Eight fails.

IX.  Claim Nine

Petitioner's ninth claim is that the trial court violated his Fifth and Fourteenth Amendment right not to be subjected to double jeopardy by sentencing him on two second degree assault convictions, where the indictments underlying each conviction alleged identical injuries.  Respondent argues that this claim fails on the merits.

The NHSC addressed this issue in its decision on Fischer's direct appeal.  See Fischer I, 165 N.H. at 715.  Accordingly, it is subject to deferential review.  See 28 U.S.C. §2254(d); Harrington, 562 U.S. at 100.

Turning to the substantive law on which Claim Nine is based, "[t]he Double Jeopardy Clause of the Fifth Amendment states that no person can 'be subject for the same offense to be twice put in jeopardy of life or limb.'"  United States v. Soto, 799 F.3d 68, 86 (1st Cir. 2015) (quoting U.S. Const. amend. V; citing United States v. Felix, 503 U.S. 378, 385 (1992)).  As the U.S. Supreme Court explained in Felix, "[a]t its root, the Double Jeopardy Clause forbids the duplicative prosecution of a defendant for the 'same offence.'"  503 U.S. at 385. Petitioner's theory is that because the indictments underlying his two convictions both recited the same injuries, i.e., "contusions and muscle strain to [Tracy's] head and neck," those indictments charged him with only one assault rather than two, notwithstanding their recitation of different acts by petitioner that occurred in different locations.

The NHSC disposed of Fischer's double-jeopardy argument this way:

> [T]he defendant was charged with two separate
> incidents of assault — the first took place in the
> living room and, sometime thereafter, the second
> occurred in the kitchen.  That each assault resulted

> in injuries to the victim's head and neck does not
> establish that they arose out of the same act or
> transaction.  We therefore conclude that the defendant
> was not subjected to multiple punishments for the same
> offense and, consequently, that his right against
> double jeopardy under the State Constitution was not
> infringed.  The Federal Constitution provides no
> greater protection than the State Constitution in this
> area.

Fischer I, 165 N.H. at 715.  In its opinion, the NHSC relied

upon the Supreme Court's seminal double-jeopardy decision in

Blockburger v. United States, 284 U.S. 299 (1932).

Claim Nine fails because petitioner has not established

that the NHSC's decision was contrary to or an unreasonable

application of Blockburger or any other Supreme Court double-

jeopardy decision.  Indeed, petitioner's memorandum of law does

not even cite Blockburger.  Moreover, Fischer's conviction for

two separate assaults is entirely consistent with Blockburger,

in which the Supreme Court rejected a criminal defendant's claim

that

> two sales [of morphine hydrochloride], having been
> made to the same purchaser and following each other,
> with no substantial interval of time between the
> delivery of the drug in the first transaction and the
> payment for the second quantity sold, constitute a
> single continuing offense.

284 U.S. at 301-02.  According to the Court, "the first sale had

been consummated, and the payment for the additional drug,

however closely following, was the initiation of a separate and

distinct sale."  Id. at 301.  Here, the two assaults for which

41

Fischer was convicted were separated from each other by the
following events and the amount of time it took for them to
unfold: (1) Fischer left the house, see Fischer I, 165 N.H. at
709; (2) he returned to the house, see id.; (3) Tracy engaged
him in a conversation, see id.; (4) he turned off the kitchen
lights and went upstairs, see id.; (5) Tracy turned the kitchen
lights back on, see id.; and (6) Fischer came back downstairs
and turned the lights off, see id.  Under Blockburger, that is
more than sufficient to establish two separate and distinct
assaults rather than a single continuing offense.

The only Supreme Court decision that petitioner cites in
support of Claim Nine is United States v. Universal C.I.T.
Credit Corp., 344 U.S. 218 (1952).  In that case, the Court was
faced with a situation in which an employer was alleged to have
committed multiple violations of three different provisions of
the Fair Labor Standards Act ("FLSA"), and was charged with a
total of thirty-two separate violations, one for each week
during which it failed to pay the minimum wage (six counts), pay
overtime (twenty counts), or maintain proper records (six
counts).  See id. at 219-20.  The trial court "[r]eject[ed] a
reading of [§] 15 [of the FLSA] whereby the prosecutor could
treat as a separate offense each breach of the statutory duty
owed to a single employee during any single workweek . . . [and]

42

granted defendant's motion to dismiss all but three counts of the information." Id. at 220. The Supreme Court affirmed.[12] After considering the legislative history of the FLSA, the Court held that "[t]he offense made punishable under the Fair Labor Standards Act is a course of conduct," id. at 224, and "that the district judge correctly held that a single course of conduct does not constitute more than one offense under [§] 15 of the Fair Labor Standards Act," id. at 226. This court has no difficulty concluding that the NHSC's decision on petitioner's double-jeopardy claim was neither contrary to nor an unreasonable application of the Supreme Court's construction of the FLSA in Universal. Accordingly, Claim Nine fails.

X.   Claim Ten

Petitioner's tenth claim is that the statute under which the trial court imposed extended terms of imprisonment, RSA 651:6, II(a), violates the Fifth and Fourteenth Amendments because it fails to provide notice to a criminal defendant concerning the circumstances that could expose him to an extended term. Respondent argues that this claim fails on the merits.

---

[12] In Universal, the Supreme Court affirmed the trial court, rather than an appellate court, because "the Government brought the case [from the district court to the Supreme Court] under the Criminal Appeals Act," 344 U.S. at 221 (citing 34 Stat. 1246, 18 U.S.C. § 3731).

The NHSC addressed this issue in its decision on Fischer's direct appeal.  See 165 N.H. at 715-17.  Thus, it is subject to deferential review.  See 28 U.S.C. § 2245(d); Harrington, 562 U.S. at 100.

The governing legal principal is that a "punishment fails to comply with due process if the statute . . . under which it is obtained . . . is so standardless that it authorizes or encourages seriously discriminatory enforcement."  Fox Television, 132 S. Ct. at 2317 (quoting Williams, 533 U.S. at 304).[13]  The Supreme Court has set a high bar for unconstitutional vagueness, and petitioner has not cleared it.

The statute under which petitioner was sentenced to an extended term of imprisonment provides that such a sentence may be imposed if the trial court finds that a defendant "[h]as twice previously been convicted . . . on sentences in excess of one year."  RSA 651:6, II(a).  Plainly, a defendant is not convicted on a sentence, which makes RSA 651:6, II(a) nonsensical.  The NHSC recognized as much in State v. Dansereau, in which it: (1) agreed "that, on its face, RSA 651:6, II(a) is

---

[13] Due process also bars convictions based upon statues that "fail[ ] to provide a person of ordinary intelligence fair notice of what [conduct] is prohibited."  Fox Television, 132 S. Ct. at 2317 (citation omitted).  But the issue in Claim Ten is the validity of petitioner's sentence, not the validity of his convictions.

ambiguous," 157 N.H. 596, 599 (2008); (2) determined that "the legislative history [of RSA 651:6, II(a)] supports a conclusion that the phrase 'convicted on sentences in excess of one year' does not include the defendant's suspended sentences," id. at 315 (citation omitted); and (3) applied the rule of lenity to determine that it was unlawful for the trial court to impose an extended term when one of the predicate convictions resulted in a suspended sentence rather than imprisonment, see id. Here, however, petitioner is not claiming that the trial court's imposition of an extended term was unconstitutional because one of his predicate convictions resulted in a suspended sentence.

Rather, petitioner's claim is that the imposition of an extended term was unconstitutional because his two predicate convictions resulted in sentences he served concurrently, rather that consecutively with a break in between. The NHSC rejected that argument. See Fischer I, 165 N.H. at 716-17. In his memorandum of law, petitioner's argument on Claim Ten is all but a word-for-word replication of the argument he made in his pro se supplemental brief to the NHSC. Because petitioner does not even address the NHSC's decision, or indicate how RSA 651:6, II(a) is "so standardless that it authorizes or encourages seriously discriminatory enforcement," Fox Television, 132 S. Ct. at 2317, he necessarily fails to identify any way in which

45

that decision was contrary to or a misapplication of federal law.  Thus, Claim Ten fails.

XI.  Claim Eleven

Petitioner's eleventh claim is that his trial counsel provided him with ineffective assistance, in fourteen different ways, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.[14]  After describing the applicable legal standard, the court turns to each of petitioner's claims of error, which are denominated in accordance with the numbering used in the order on preliminary review.

A.    The Legal Standard

The court of appeals for this circuit has recently outlined the relevant legal principles:

> Ineffective-assistance claims are governed by the
> Supreme Court's decision in Strickland v. Washington,
> 466 U.S. 668 (1984), under which the defendant must
> prove two elements.  First, the defendant must show
> that counsel's performance was deficient, which
> requires showing that counsel's performance was not
> only substandard, but also deficient in some way
> sufficiently substantial to deny him effective
> representation.  Second, the defendant must show that
> the deficient performance prejudiced the defense,
> which requires proof that there is a reasonable
> probability that, but for counsel's unprofessional

---

[14] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and "the 'essential aim' of the Sixth Amendment 'is to guarantee an effective advocate for each criminal defendant,'" United States v. Laureano-Pérez, 797 F.3d 45, 55 (1st Cir. 2015) (quoting Wheat v. United States, 486 U.S. 153, 159 (1988)).

errors, the result of the proceeding would have been
different.

Jaynes, 824 F.3d at 196 (quoting Logan, 790 F.3d at 71)

(parallel citations omitted).  The court continued:

> "[W]hen a federal court reviews an ineffective
> assistance of counsel claim under § 2254, it must use
> a doubly deferential standard of review that gives
> both the state court and the defense attorney the
> benefit of the doubt.  This is an extremely difficult
> standard to meet . . . ."  Pena v. Dickhaut, 736 F.3d
> 600, 606 (1st Cir. 2013) (citations and internal
> quotation marks omitted).  "[T]he pivotal question in
> a federal collateral attack under Strickland is not
> whether defense counsel's performance fell below
> Strickland's standard, but whether the state court's
> application of the Strickland standard was
> unreasonable, that is, whether fairminded jurists
> would all agree that the decision was unreasonable."
> Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011)
> (citations and internal quotation marks omitted).

Id.; see also Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007)

(explaining that "an ineffective assistance of counsel claim is

a mixed question of law and fact" reviewed under the

unreasonable application provision of § 2254(d)(1)) (citing

Strickland, 466 U.S. at 698; Taylor, 529 U.S. at 409; Scarpa v.

DuBois, 38 F.3d 1, 9 (1st Cir. 1994)).

    1.   Claim 11(a)

In its order on preliminary review, this court

characterized Claim 11(a) as asserting that "[t]rial counsel

provided Fischer with ineffective assistance . . . by . . .

failing to ensure that the jury was properly instructed

regarding the 'recklessness' and 'extreme indifference to the value of human life' elements of second degree assault."  To the extent that Claim 11(a) holds defense counsel liable for the actions of the trial court, it necessarily fails.  The proper focus of an ineffective-assistance claim is what counsel did or did not do, not what the trial court did or did not do in response to counsel's actions.  In other words, counsel may perform ineffectively by failing to object to an erroneous jury instruction, but if the court gives such an instruction over counsel's objection, the remedy for that is not a claim of ineffective assistance.[15]  That said, the problem with Claim

---

[15] In his memorandum of law, petitioner makes the following argument:

> Either attorney White failed to timely object to the court's jury instructions or he failed to more strenuously argue that the jury needed to be informed of the definition of "extreme indifference to the value of human life" and that the court's instruction on the definition of "reckless" gave the jury the incorrect standard . . . .  In either event, Attorney White's representation did not rise to [the] constitutionally required level of effective assistance.

Pet'r's Mem. of Law (Doc. No. 16) 58.  He supports that argument with citations to two cases that stand for the proposition that failure to object to improper jury instructions can be ineffective assistance, but he cites no case, and the court is aware of none, in which trial counsel has been deemed constitutionally ineffective for failing to argue strenuously enough, after raising an issue sufficiently to preserve it for appellate review.

11(a) is that defense counsel did object to the trial court's
jury instructions on second degree assault.  See Trial Tr. (Dec.
8, 2010) 97:1 – 98:23.  Judge Wageling noted as much in her
order denying Fischer's motion for a new trial, in which she
wrote:

> Attorney White did object to the jury instructions
> specifically for this reason [i.e., their purported
> failure to properly define the difference between
> ordinary "recklessness" and "extreme indifference to
> the value of human life"] and [did so] on the record.
> His objection was made prior to the Court giving the
> standard instructions.  Thus, Attorney White's conduct
> was constitutionally effective.

State v. Fischer (Fischer II), No. 219-2010-CR-00127, slip op.
at 14 (N.H. Super. Ct., Strafford Cty. Mar. 21, 2012) (emphasis
in the original).  Petitioner does not argue that Judge
Wageling's decision rested on an unreasonable application of
Strickland, and it did not.  Accordingly, Claim 11(a) fails.

### 2.  Claims 11(b) & (d)

Petitioner believes that his defense would have been
strengthened by evidence that at the time of the events giving
rise to his convictions, Tracy was taking medication that had
the side effect of increasing her susceptibility to bruising.
On that basis, he claims that his trial counsel provided
ineffective assistance by failing to: (1) properly argue for the
admissibility of testimony from Tracy concerning the medication
she was taking and its side effects (Claim 11(b)); and (2)

49

adequately argue that expert testimony was not needed for the
admission of evidence regarding the "easy bruising" side effect
of Tracy's medication, pursuant to the hearsay except in Rule
803(17) of the New Hampshire Rules of Evidence (Claim 11(b)).

The issues that petitioner raises in Claims 11(b) and (d)
were never brought before the superior court.  <u>See</u> Resp't's Mem.
of Law (Doc. No. 12-1) 6-7 (listing issues raised in Fischer's
motion for a new trial and his state habeas petition, which do
not include those underlying Claims 11(b) and (d));[16] Pet'r's
Mem. of Law (Doc. No. 16) 6 ("The petitioner agrees that the
procedural history recited by the respondent in its Motion for
Summary Judgment is accurate.").  That, in turn, explains why
petitioner's memorandum of law says nothing about Claims 11(b)
and (d).  By virtue of his silence, petitioner necessarily has
failed to show, with regard to the issue underlying Claims 11(b)
and (d), that his counsel performed deficiently, that he was
prejudiced by counsel's performance, or that any state court
unreasonably applied <u>Strickland</u>.  Thus, Claims 11(b) and (d)
fail.

---

[16] Respondent's memorandum of law later states that Fischer
raised the issues underlying Claims 11(b) and (d) in his motion
for a new trial, <u>see</u> Doc. No. 12-1, at 31, but that appears to
be a misstatement, as the memorandum goes on to discuss defense
counsel's decision not to hire an expert, which is the issue
underlying Claim 11(c)(iii).

### 3.   Claim 11(c)(i)

Petitioner claims that his trial counsel provided ineffective assistance by failing to interview Tracy's ex-husband concerning her prior rage problems and abusiveness.  In her order on Fischer's motion for a new trial, Judge Wageling ruled that "Attorney White's decision[ ] to forego interviewing certain witnesses . . . to show [Tracy's] history for abusiveness [was] objectively reasonable" in light of the State's decision "not [to] introduce testimony from its domestic violence expert," and Attorney White's understanding that the only purpose of testimony from Tracy's ex husband would be "to rebut that expert's testimony."  Fischer II, slip op. at 4-5. Respondent argues that Judge Wageling's ruling is entitled to deference.

Petitioner's memorandum of law offers nothing more than a verbatim recitation of the argument he made in his motion for a new trial.  Necessarily, he does not argue, much less demonstrate, that Judge Wageling's application of Strickland was unreasonable.  Thus, Claim 11(c)(i) fails.

### 4.   Claim 11(c)(ii)

Petitioner claims that his trial counsel provided ineffective assistance by failing to obtain Tracy's mental

health records related to her rage problems and abusiveness.[17]
In her order on Fischer's motion for a new trial, Judge Wageling
ruled that "Attorney White's decision[ ] to forego . . .
seek[ing] admission of Tracy's mental health records to show her
history for abusiveness [was] objectively reasonable" in light
of the State's decision "not [to] introduce testimony from its
domestic violence expert," and Attorney White's understanding
that the only purpose of admitting Tracy's mental health records
would be "to rebut that expert's testimony." Fischer II, slip
op. at 4-5.  Respondent argues that Judge Wageling's ruling is
entitled to deference.

    Petitioner's memorandum of law consists of a verbatim
recitation of the argument he made in his motion for a new trial
plus this:

         The Respondent argues that because the decision
    not to seek [Tracy's mental health] records was
    allegedly made after the State decided it would not
    introduce expert testimony it is dispositive of the
    issue.  This argument pre-supposes that such evidence
    would only be admissible if the State introduced such

---

    [17] The court notes that while Claim 11(c)(ii) pertains to
Tracy's "mental health records," petitioner's memorandum of law
does not indicate what those records might be, other than to
assert, on "reason and belief," that "Tracy Fischer has had
life-long mental health issues and has participated in marriage
counseling with her 3rd husband," Pet'r's Mem. of Law (Doc. No.
16) 59.  Thus, petitioner's claim is not so much that his
counsel performed deficiently by deciding not to seek some
specific mental health record but, rather, that counsel's
shortcoming was declining to go on a fishing expedition for
whatever mental health records might be available.

> evidence.  As shown above, it is the petitioner's
> position that such evidence was admissible and
> exculpatory regardless of the State's strategic
> decisions.

Pet'r's Mem. of Law (Doc. No. 16) 61.  According to petitioner,

Tracy's mental health records were admissible for impeachment

purpose and because she had

> demonstrated a pattern [of] irrational rage, displayed
> through hostile, aggressive and assaultive behavior,
> throughout her marriage to [him] and was acting in
> conformity with this character trait on the evening of
> the incident that led to the charges [at] issue.

Id. at 59.

Even if there are, somewhere, mental health records

relating to Tracy's purported "rage problems and abusiveness,"

which petitioner has not actually demonstrated, and even if any

such records might have been used in the ways that petitioner

describes in his memorandum of law, that does not demonstrate

that his counsel performed in a constitutionally ineffective

manner by failing to obtain those records.  Assuming that

defense counsel's failure to obtain Tracy's mental health

records was sufficiently deficient to satisfy the first prong of

Strickland, petitioner has failed to show that there is a

reasonable probability that he would have been acquitted if his

counsel had obtained, and used at trial, the records at issue.

Moreover, at least one of the uses for Tracy's mental health

record that petitioner proposes sounds rather like a "blame-the-

victim" strategy, which is hardly a sure-fire winner.  See,
e.g., Dansby v. Hobbs, 766 F.3d 809, 839 (8th Cir. 2014) ("It is
speculative whether a strategy focused on Brenda's 'attachment
style,' which could well be construed by a jury as an effort to
'blame the victim,' would have produced a different outcome.
This claim of ineffective assistance is not substantial.").
Rather, such a strategy can be fraught with peril.  See, e.g.,
Gutierrez v. Crews, Civ. No. 10-64-WOB-JGW, 2011 WL 6955488, at
*6 (E.D. Ky. Oct. 3, 2011) ("presenting the experts' testimony
would have opened the door to the pitfalls previously discussed
(seeming to blame the victim . . .), which could have adversely
affected the jury's attitude to the petitioner").  But, even if
trial counsel's performance ran afoul of Strickland, which it
did not, petitioner has failed, by a wide margin, to show that
"fairminded jurists would all agree," Jaynes, 824 F.3d at 196,
that Judge Wageling's application of Strickland was
unreasonable.  Accordingly, Claim 11(c)(ii) fails.

     5.    Claim 11(c)(iii)

Petitioner claims that his trial counsel provided
ineffective assistance by failing to obtain an expert witness to
testify that one side effect of Tracy's medication was easy
bruising.  As he asserts that claim in his memorandum of law:

> [T]rial counsel . . . did not consult with a
> pharmaceutical or medical expert that would have

> enabled him to present expert testimony that Tracy's
> medications have the side-effects of "bruising easily"
> (Humira) and "unusual bleeding or bruising"
> (Methotrexate) and that it would have been medically
> impossible for Tracy not to have suffered some
> identifiable injury if [he] had acted in the manner
> alleged.

Doc. No. 16, at 63.

In her order on Fischer's motion for a new trial, Judge Wageling determined that counsel's decision not to call an expert witness did not constitute ineffective assistance.  In so ruling, she noted defense counsel's explanation for that strategic decision: (1) the lack of bruising was good for Fischer's case, and he was able to establish that on cross-examination without having to expend resources on an expert witness; and (2) theoretical evidence on potential side effects of Tracy's medication would have added relatively little to Fischer's defense.  In her order on Fischer's motion for reconsideration, Judge Wageling noted that at the hearing on his motion for a new trial, Fischer "did not introduce any testimony from an expert witness to demonstrate precisely what an expert on the issue would have testified to at trial."  State v. Fischer (Fischer III), 219-2010-CR-00127, slip op. at 8 (N.H. Super. Ct., Strafford Cty. June 6, 2012).

In its motion for summary judgment, respondent contends that it is entitled to judgment as a matter of law because: (1)

the record Fischer placed before Judge Wageling did not entitle him to the relief he sought; and (2) he is precluded from further developing that record in this court.

Claim 11(c)(iii) fails because petitioner has not established that: (1) his counsel's decision not to call an expert witness was deficient; (2) he was prejudiced by that decision; or (3) Judge Wageling's decision was an unreasonable application of Strickland.

While petitioner has speculated as to what an expert might have said at trial, speculation is all he has.  As Judge Wageling pointed out, petitioner "did not introduce any testimony from an expert witness to demonstrate precisely what an expert on the issue would have testified to at trial." Fischer III, slip op. at 8.  That, in turn, distinguishes this case from those on which petitioner relies for the proposition that failure to call an expert witness constitutes ineffective assistance of counsel.  See Gersten v. Senkowski, 426 F.3d 588, 599-601 (2d Cir. 2005) (discussing affidavits from two doctors); Pavel v. Hollins, 261 F.3d 210, 227-28 (2d Cir. 2001) (discussing affidavit from doctor); Holsomback v. White, 133 F.3d 1382, 1388 (11th Cir. 1998) (discussing doctor's testimony at trial court evidentiary hearing).  Without any evidence concerning what an expert might have testified to, Judge

Wageling was in no position to determine that defense counsel's decision not to introduce expert testimony was either deficient or prejudicial to Fischer.   Therefore, there is no basis for this court to determine that Judge Wageling's decision to reject Fischer's ineffective assistance claim was an unreasonable application of <u>Strickland</u>.   Accordingly, Claim 11(c)(iii) fails.

> 6.   <u>Claim 11(c)(iv)</u>

Petitioner claims that his trial counsel provided ineffective assistance by failing to obtain Tracy's cell phone records from the night of the incident, which would have provided evidence that would have impeached her testimony.

In his motion for a new trial, Fischer noted that his trial counsel failed to obtain Tracy's telephone records because he had missed a discovery deadline.   Then he made the following argument:

> In her trial testimony, Tracy Fischer confirmed her use of her cell phone, claiming that she had been texting her friend "Kate" the evening of the incident that gave rise to these charges.   Upon reason and belief, Tracy Fischer's testimony was not truthful. Rather, based on the newly discovered evidence that Tracy Fischer was having an adulterous affair with one Eric Bacon, the defendant takes the position that Tracy Fischer was in fact "texting" Eric Bacon on the evening in question.   The defendant further submits that Tracy Fischer's telephone/text records can substantiate this claim.
>
> . . . .
>
> Had Attorney White requested production of Tracy

> Fischer's telephone records in a timely manner . . .
> it could have been ascertained who she was in fact in
> contact with and the actual dialogue of the text could
> have been discovered.  . . .
>
> Attorney White's failure to timely request
> discovery of Tracy Fischer's telephone/text records
> utterly precluded any challenge to Tracy Fischer's
> credibility on this issue and constituted
> unconstitutional ineffective assistance of counsel.

Mot. for New Trial at 4-5, State v. Fischer, No. 219-2010-CR-

00127 (N.H. Super. Ct., Strafford Cty.).  Judge Wageling

disagreed:

> Attorney White's decision[ ] not to seek admission of
> Tracy's cell phone [and] text message . . . records
> [was] also reasonable.  . . .  The defendant asserts
> that Tracy's cell phone . . . records would, among
> other things, demonstrate that Tracy was having an
> adulterous affair.  Thus, he argues, the records would
> demonstrate [that] Tracy lied under oath about whom
> she was texting . . . .  However, Attorney White
> explained at the hearing that, at the outset, he chose
> not to raise the issue of adultery at trial, making
> the strategic decision that Tracy's alleged infidelity
> would provide a strong motive for Defendant's charged
> crimes.  Moreover, Attorney White's decision to omit
> this evidence was made prior to Tracy's testimony
> regarding who she was texting. . . .

Fischer II, slip op. at 5.  She went on to note that it was

unclear whether extrinsic such as Tracy's phone records would

have been admissible to challenge her credibility.

In a motion for reconsideration, Fischer clarified that the

ineffective assistance he was claiming was not a strategic

decision regarding the admission of Tracy's phone records but,

rather, his counsel's failure to obtain those records in the

first instance.  He elaborated:

> [T]he court misconstrues the defendant's argument
> regarding Attorney White's failure to obtain and use
> Tracy's cell phone records.  . . .  What the defendant
> has repeatedly argued, and . . . the State and the
> court [have] thusfar chosen to ignore and/or
> misconstrue is that he contends [that] Tracy's
> telephone records would have demonstrated that she was
> texting someone other than her friend "Kate."  Had
> [A]ttorney White properly investigated it would have
> been discovered <u>who</u> exactly Tracy was texting.  It is
> immaterial to the defendant's argument whether Tracy
> was texting her paramour or someone else.  What is
> important is that she lied under oath about who she
> was texting.

Def.'s Mot. for Recons. of Order Denying Def.'s Mot. for New

Trial at 3, <u>State v. Fischer</u>, No. 219-2010-CR-00127 (N.H. Super.

Ct., Strafford Cty.).  In denying Fischer's motion, Judge

Wageling: (1) reiterated the likely inadmissibility of Tracy's

telephone records; (2) acknowledged that Fischer was challenging

defense counsel's failure to obtain those records but declined

to "hold Attorney White to a standard that requires him to

predict the future and to know, in advance, the witnesses'

testimony," <u>Fischer III</u>, slip op. at 4; and (3) noted that

Fischer had "not presented the Court with any evidence that

Tracy lied about her cell phone conversations," <u>id.</u>

In this court, respondent's memorandum of law does little

more than report what Judge Wageling had to say in her order

denying Fischer's motion for a new trial.  Petitioner's

memorandum of law is largely a replication of his motion for a

new trial, with two exceptions.  He deleted three sentences about Tracy's purported affair and added this:

> The respondent argues that the failure to seek [Tracy's phone records] was not ineffective because defense counsel did not want to present evidence of adultery.  The petitioner is wholly unaware of where the issue of adultery has its genesis because the petitioner has always maintained that adultery was not at issue in this case (although he did respond to the issue in prior motions), but rather that it was "Kate" who Tracy was speaking to and who needed to be interviewed and that "Kate" would have provided exculpatory testimony that during their late-night telephone call Tracy had not told [Kate that] the petitioner had assaulted her, or had not exaggerated the degree of any assault as she would later do.

Pet'r's Mem. of Law (Doc. No. 16) 62.

Claim 11(c)(iv) is, to put it charitably, a moving target. Specifically, the court cannot even begin to understand how to reconcile: (1) Fischer's assertion in his motion for a new trial that "the defendant takes the position that Tracy Fischer was in fact 'texting' Eric Bacon on the evening in question," (2) his statement in his motion for reconsideration that "Tracy's telephone records would have demonstrated that she was texting someone other than her friend 'Kate,'" and (3) his subsequent statement that "the petitioner has always maintained that . . . it was 'Kate' who Tracy was speaking to," Pet'r's Mem. of Law (Doc. No. 16) 62.  Be that as it may, and notwithstanding the convoluted history of the issue at the heart of Claim 11(c)(iv), that claim fails for a simple, straightforward reason: Judge

Wageling did not unreasonably apply Strickland when she ruled
that defense counsel's handling of Tracy's phone records did not
amount to ineffective assistance.

Even if defense counsel performed deficiently by failing to
obtain Tracy's telephone records, which hardly seems likely,[18]
petitioner has not demonstrated prejudice because he has never
produced any evidence of what Tracy purportedly said to Kate (or
texted to Bacon).  Without knowing what Tracy said (or texted),
it is impossible to say whether the outcome of petitioner's
trial would have been different if defense counsel had obtained
Tracy's phone records.  Without any evidence from which a
Strickland violation could have been found, it necessarily the
case that Judge Wageling did not unreasonably apply Strickland
when she denied Fischer's claim that defense counsel provided
ineffective assistance by failing to obtain Tracy's telephone
records.  Accordingly, Claim 11(c)(iv) fails.

---

[18] Regarding the evidence that petitioner says defense
counsel ultimately should have obtained, i.e., testimony from
Kate about her conversation with Tracy, the court notes Judge
Wageling's reasonable skepticism that the New Hampshire Rules of
Evidence would permit the use of extrinsic evidence to impeach a
witness's credibility, and further observes that whether used
for impeachment or for some other purpose, testimony from Kate
concerning what Tracy said to her over the telephone would most
likely be hearsay.  It is difficult to see how a failure to
obtain inadmissible evidence could qualify as ineffective
assistance.

7.   <u>Claim 11(e)</u>

Petitioner claims that his trial counsel provided ineffective assistance by conceding his guilt during the trial and in his closing argument.  While petitioner offers no citations to the record, it is apparent that Claim 11(e) arises from the following statements made by defense counsel during his closing argument:

> I submit that once the Court has given you the definition of simple assault, if you find that physical contact was made, then that is an option.
>
> . . . .
>
> Okay.  A scratch is some injury.  An abrasion is some injury.  But there's more to the definition of second degree assault.  That's the extreme indifference to human life.  Did David grab [Tracy] from behind?  Yes.  Physical contact.  Unprivileged.  Simple assault.
>
> Did David push [Tracy] back into the [couch] into the wall?  Physical contact.  Touching, unprivileged.  Simple assault.  <u>Not second degree assault</u>.
>
> . . . .
>
> Apply [your recollection of the facts] to the law as the Judge will give it to you, and I submit when you're done with that the charges of second degree assault, they're not there.  There may be something there, <u>but it's not second degree assault</u>.

Trial Tr. (Dec. 8, 2010) 128:12-14, 129:9-16, 131:21-24

(emphasis added).[19]

---

[19] While petitioner claims that defense counsel conceded guilt both during trial and in his closing argument, the lack of

In rejecting Fischer's claim that defense counsel provided
ineffective assistance by conceding his guilt, Judge Wageling:
(1) cited <u>State v. Anaya</u>, 134 N.H. 346, 353-54 (1991) (holding
that trial counsel provided ineffective assistance by conceding
guilt to lesser-included offense where defendant had refused to
plead guilty to that offense, testified at trial that he was
innocent of both charged offense and lesser-included offense,
and directed counsel to argue for total innocence); (2) cited
<u>Reid v. Warden</u>, 139 N.H. 530, 533 (1995) (holding that
concession of guilt to lesser included offense was not
ineffective assistance of counsel where defendant "did not take
the [witness] stand to profess his innocence" and trial counsel
testified, at hearing on state habeas petition, "that the
[petitioner] was aware of trial counsel's strategy and had
agreed to it"); (3) noted that Fischer had not taken the witness
stand to profess his innocence; (4) found that defense counsel
had discussed his closing argument with Fischer before he gave

---

citation to the record leaves the court at a loss as to any
other purported concessions of guilt.  In his oral motion to
dismiss the second degree assault charges, defense counsel
asserted that the evidence on those charges was insufficient and
then said: "Simple assault, different story."  Trial Tr. (Dec.
8, 2010) 92:19-20.  But as the jury was out of the courtroom
when counsel made that statement, it is difficult to see how
this "concession" could possibly rise to the level of
ineffective assistance.

it; (5) noted that the State had introduced evidence of a statement by Fischer that he had pushed Tracy onto a couch;[20] and (6) reported defense counsel's testimony at the hearing on Fischer's motion for a new trial that "it 'would have been foolish' to argue that nothing [had] happened between Tracy and [Fischer]," Fischer II, slip op. at 9.  In her order on Fischer's motion to reconsider, Judge Wageling went a step further, explaining that defense counsel's conditional, qualified statements were not even concessions of guilt to simple assault.

In his memorandum of law, petitioner makes the following argument:

> During his closing argument to the jury and throughout the trial Attorney White conceded defendant was guilty of "something," but without ever explaining to the jury what that something was.  This could have been construed by the jury as an admission that the defendant was guilty of either the greater or the lesser offense.

> . . . .

> The petitioner has ALWAYS maintained his innocence of the charged offenses!  That said, the petitioner has also always maintained that something, a lesser assault, did occur.  . . .  Moreover, while the petitioner would not have had a problem with trial counsel conceding guilt on a specific lesser-included offense[,] that is not what occurred and is not what

_____

[20] At trial, Fischer's sister testified about a statement she gave to the police in which she reported that Fischer had told her that he had "pushed [Tracy] onto the couch."  Trial Tr. (Dec. 8, 2010) 44:12-13.

is complained of here.  The manner in which trial
counsel conceded guilt in a very cryptic manner . . .
served to further convolute this already confusing
case.

Pet'r's Mem. of Law (Doc. No. 16) 67 (emphasis added).

The court begins its analysis with the trial record.  As
Judge Wageling correctly observed, the jury heard competent
evidence that Fischer engaged in conduct that met the statutory
definition of simple assault, which is defined in the New
Hampshire Criminal Code to include "[p]urposely or knowingly
caus[ing] . . . unprivileged physical contact to another."  RSA
631:2-a, I(a).  In his closing argument, defense counsel
conceded either the possibility that Fischer was guilty of
simple assault or that he was, in fact, guilty of that offense.
However, it is not necessary to determine the precise scope of
counsel's concession.  Given the evidence the jury heard,
counsel did not perform deficiently by conceding the obvious.
Fischer was guilty of simple assault, and he says as much in his
memorandum of law.  Thus, it was a reasonable trial strategy, if
not an exemplary one, to concede guilt to simple assault.  See
Reid, 139 N.H. at 533 ("We agree with the superior court that
counsel's actions [i.e., admitting to guilt on a lesser-included
offense] constituted reasonable trial strategy.").

If defense counsel had conceded that Fischer was guilty of
second degree assault, as petitioner suggests in his memorandum

65

of law, that would be a different story.  But there is no way
that any reasonable juror could possibly have interpreted
anything defense counsel said during his closing argument as a
concession of guilt on the charge of second degree assault.

     In sum, petitioner cannot establish the first prong of a
Strickland violation; his counsel did not perform deficiently by
conceding that he was guilty of simple assault.  Because defense
counsel's performance did not violate Strickland, Judge
Wageling's disposition of the issue underlying Claim 11(e) was
not an unreasonable application of Strickland.  Accordingly,
Claim 11(e) fails.

          8.   Claims 11(f) & (g)

     Petitioner claims that his trial counsel provided
ineffective assistance by failing to: (1) properly object at
trial to erroneous jury instructions concerning the meaning of
"extreme indifference to the value of human life" (Claim 11(g));
and (2) clarify for the jury the meaning of "extreme
indifference to the value of human life" in his closing argument
(Claim 11(f)).  These claims fail because: (1) the jury was
properly instructed on the element at issue;[21] and (2) defense

---

[21] As the NHSC said: "We find no error in the trial court's
instructions.  Here, the jury instructions mirrored the language
that we have approved regarding the requirements for second
degree assault."  Fischer I, 165 N.H. at 714.

counsel's closing argument on that element closely tracked the
instructions that were given to the jury.  The essence of Claims
11(f) and (g) is that defense counsel performed deficiently by
failing to effectively advance a legal theory that that the NHSC
ultimately rejected on appeal.[22]  The NHSC's rejection of that
theory demonstrates that it would have been futile for defense
counsel to have pursued it more strenuously at trial,[23] and it is
well established that counsel does not perform deficiently by
"declin[ing] to pursue a futile tactic," Vieux v. Pepe, 184 F.3d
59, 64 (1st Cir. 1999) (citing United States v. Wright, 573 F.3d
681, 684 (1st Cir. 1978)); cf. Knight v. Spencer, 447 F.3d 6, 16
(1st Cir. 2006) ("Knight's counsel could not have rendered
ineffective assistance in failing to object to alleged errors of
state evidentiary law that were either non-prejudicial or
nonexistent.").  In light of Vieux, Judge Schulman did not
unreasonably apply Strickland when he rejected Fischer's claim

---

[22] As with Claim 11(a), Claims 11(f) and (g) sound less like
claims that defense counsel failed to take a step he should have
taken but, rather, that he did what petitioner says he should
have done, but with insufficient vigor to prevail.  Again, that
appears not to state a viable claim for ineffective assistance
of counsel.

[23] It is, perhaps, possible that the trial court could have
adopted petitioner's theory on the elements of second degree
assault if defense counsel had persuasively advocated for it,
but petitioner surely had no constitutional right to an
erroneous ruling of law in his favor.

that trial counsel "should have more persuasively objected to the court's jury instruction on the element of 'extreme indifference to the value of human life.'"  Fischer v. Diamont (Fischer IV), 216 2014-CV-0699, slip op. at 36 (N.H. Super. Ct., Hillsborough Cty., N. Div. Jan. 8, 2015).  Accordingly, Claims 11(f) and (g) both fail.

### 9.   Claim 11(h)

Petitioner claims that his trial counsel provided ineffective assistance by failing to move for a directed verdict at the close of the State's case, when there was insufficient evidence from which the jury could find that the element of "bodily injury" had been proven beyond a reasonable doubt.  This claim is a bit perplexing.

In his pro se supplemental brief, Fischer claimed that the trial court erred by failing to rule that the State had presented insufficient evidence to establish the bodily-injury element of second degree assault.  He asserted that the issue was preserved because "trial counsel moved to dismiss based on insufficiency of the evidence," and that assertion is borne out by the trial record, see Trial Tr. (Dec. 8, 2010) 92:15-19.  It is not at all clear how Claim 11(h) can survive the fact that defense counsel did move to dismiss the criminal charges against Fischer due to a purported insufficiency of the evidence.

68

But, even if trial counsel had not made a motion to dismiss based upon the insufficiency of the evidence on the bodily-injury element, this court's disposition of Claim Six would dictate a determination that Claim 11(h) also fails. Specifically, the court has already ruled that the State introduced sufficient evidence to carry its burden of establishing the bodily-injury element of second degree assault. Thus, a motion to dismiss based upon an insufficiency of the evidence on that element would have been futile.  Counsel does not perform deficiently by declining to make futile arguments, see Vieux, 184 F.3d at 64, so failure to make the motion petitioner now claims defense counsel did not make would not have amounted to ineffective assistance.

Finally, for the sake of completeness, the court notes that Fischer asserted the issue underlying Claim 11(h) in his petition for a writ of habeas corpus in the state courts.  Judge Schulman appears to have assumed the accuracy of Fischer's assertion that his trial counsel did not move to dismiss on grounds that the State had introduced in sufficient evidence of bodily injury.  He then described the evidence, determined that it was sufficient to establish bodily injury, pointed out that defense counsel was not constitutionally obligated to argue a meritless motion, and rejected Fischer's claim that his counsel

performed ineffectively by failing to move to dismiss for insufficient evidence of bodily injury.  Nowhere in petitioner's memorandum of law does he even mention Judge Schulman's order, much less argue that it involved an unreasonable application of Strickland.  But even if petitioner had made such an argument, it would fail; Judge Schuman's resolution of this issue was based upon an entirely reasonable application of Strickland.

The bottom line is this: whether or not defense counsel moved to dismiss the charges against Fischer on grounds of insufficient evidence of bodily injury, Claim 11(h) fails.

### 10.   Claim 11(i)

Petitioner claims that his trial counsel provided ineffective assistance by failing to object to the court's erroneous jury instruction regarding bodily injury.  Fischer raised the issue underlying Claim 11(i) in his petition for a writ of habeas corpus in the state courts.  Judge Schulman rejected that claim, explaining that because the instruction was a correct statement of New Hampshire law, Fischer's counsel did not perform deficiently by failing to challenge it.  Petitioner does not mention Judge Schulman's decision, much less argue that it resulted from an unreasonable application of Strickland.  If petitioner had made such an argument, the court would reject it. Accordingly, Claim 11(i) fails.

11.  Claim 11(j)

Petitioner claims that his trial counsel provided ineffective assistance by failing to object to the constructive amendment of the indictment.  Given this court's rejection of petitioner's claim that the trial court allowed the constructive amendment of his indictment (Claim Seven), Claim 11(j) necessarily fails.  See Vieux, 184 F.3d at 64 (explaining that counsel does not perform deficiently by "declin[ing] to pursue a futile tactic").

12.  Claim 11(k)

Petitioner claims that his trial counsel provided ineffective assistance by failing to request a specific unanimity instruction.  As with Claim 11(c)(i), the argument in petitioner's memorandum of law is nothing more than a verbatim recitation of the argument he made in his motion for a new trial.  Thus, as a logical matter, petitioner's argument is insufficient to demonstrate that Judge Wageling misapplied the Strickland standard when she rejected this claim in her order denying Fischer's motion for a new trial.  Accordingly, Claim 11(k) fails.

XII. Claim Twelve

Petitioner's twelfth claim is that his appellate counsel provided him with ineffective assistance, in three different

71

ways, in violation of his rights under the Fifth, Sixth, and
Fourteenth Amendments.  Again, the court begins with the legal
standard and then turns to petitioner's claims.

    A.    <u>The Legal Standard</u>

In a recent decision on a § 2254 petition, Judge Laplante
stated the applicable legal standard:

> The . . . federal standard for evaluating an
> ineffective assistance of appellate counsel claim . .
> . requires the petitioner to show that: (1) appellate
> counsel's performance in failing to brief certain
> issues fell below an objective standard of
> reasonableness, and (2) there is a reasonable
> probability that, but for counsel's unprofessional
> errors, petitioner would have prevailed on those
> issues.

<u>Moussa v. Warden, N.H. State Prison</u>, No. 12-cv-015-JL, 2015 WL
1457541, at *13 (D.N.H. Mar. 30, 2015) (citing <u>Strickland</u>, 466
U.S. at 686-88; <u>Ramirez-Burgos v. United States</u>, 313 F.3d 23, 28
(1st Cir. 2002)).  Showing that a decision not to brief an issue
fell below an objective standard of reasonableness is difficult
to do because "appellate counsel who files a merits brief need
not (and should not) raise every nonfrivolous claim, but rather
may select from among them in order to maximize the likelihood
of success on appeal."  <u>Smith v. Robbins</u>, 528 U.S. 259, 288
(2000) (citing <u>Jones v. Barnes</u>, 463 U.S. 745 (1983)).  Moreover,
as to issues not raised, it is generally the case that "only
when ignored issues are clearly stronger than those presented,

will the presumption of effective assistance of counsel be overcome." Smith, 528 U.S. at 288 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). With those principles in mind, the court turns to petitioner's three claims of ineffective assistance of appellate counsel.

    1.   Claim 12(a)

Petitioner claims that his appellate counsel provided ineffective assistance by failing to assert that the jury was improperly instructed with regard to the "recklessness" and "extreme indifference to the value of human life" elements of second degree assault. Appellate counsel devoted four pages of his brief to an argument that "the trial court erred in its instructions defining the element of extreme indifference to the value of human life," and the NHSC devoted more than a full page of its published decision to that issue, see Fischer I, 165 N.H. at 713-714. Thus, there is no basis for a claim that appellate counsel failed to assert that the jury was improperly instructed as to that element of second degree assault. That said, it is true that Fischer developed this issue differently in his pro se supplemental brief by adding the element of "recklessly" to the analysis. However, as the court has pointed out in its discussion of Claim Two, petitioner's argument (both in his pro se supplemental brief and in his memorandum of law in this case)

73

is based upon a legal premise that the NHSC has soundly rejected, i.e., that recklessness and extreme indifference to the value of human life are both states of mind required to prove second degree assault.  Because the NHSC has rejected that premise, if would have been futile for appellate counsel to make the argument petitioner faults him for failing to make.  Because counsel is not required to make futile arguments, see Vieux, 184 F.3d at 64, Judge Schulman did not unreasonably apply Strickland when he rejected this claim in his order on Fischer's state-court habeas petition.  Accordingly, Claim 12(a) fails.

2.   Claim 12(b)

Petitioner claims that his appellate counsel provided ineffective assistance by failing to assert that the trial court committed plain error by giving an erroneous jury instruction regarding the definition of "bodily injury."  Fischer raised this claim in his petition for a writ of habeas corpus in the state court, and Judge Schulman rejected it.  Among other things, Judge Schulman: (1) pointed out that the instruction Judge Brown gave came directly from the standard jury instructions promulgated by the New Hampshire Bar Association's Task Force on Criminal jury Instructions and was consistent with instructions that had been approved in multiple decisions from the NHSC; and (2) rejected Fischer's argument that "the term

'bodily injury' in the Criminal Code should be construed synonymously with the term 'physical injury,' as read by the New Hampshire Supreme Court[ ] for the purpose of defining 'abuse' under the Child Protection Act."   Fischer IV, slip op. at 21. Petitioner does not address Judge Schulman's order on his state-court habeas petition.

There is no legal support for a plain-error challenge to the trial court's jury instruction on bodily injury, which was in conformance with decisions from the NHSC.  Failing to argue for an alternative definition of bodily injury on appeal was in no way deficient, which means that petitioner cannot establish the first prong of a Strickland violation.  Necessarily, he has fallen far short of demonstrating that Judge Schulman's application of Strickland was unreasonable.  Accordingly, Claim 12(b) fails.

### 3.   Claim 12(c)

Petitioner's final claim is that his appellate counsel provided ineffective assistance by failing to provide the NHSC with caselaw supporting his argument that the trial court committed plain error by failing to properly instruct the jury about juror unanimity.  The court begins with the circumstances giving rise to Claim 12(c) and then proceeds to its analysis.

As a part of his jury charge, Judge Brown gave the

following instruction: "In order to return a verdict, it is
necessary that each and every juror agree with the verdict.
Your verdict must be unanimous."  Trial Tr. (Dec. 8, 2010)
162:6-8.  He did not further instruct the jury that it had to
reach a unanimous decision as to each element of any particular
charged offense nor did he instruct the jury that to convict
Fischer on a charge of second degree assault, it had to agree,
unanimously, on a specific bodily injury that supported the
charge on which he was convicted.  Fischer's trial counsel did
not object to this aspect of the jury instructions.

In his brief to the NHSC, Fischer's appellate counsel
argued that the trial court committed plain error in failing to
give instructions adequate to ensure that the jury could not
convict without agreeing unanimously on a particular bodily
injury.  In support of that argument, he cited State v. Greene,
in which the NHSC held that "[w]here discrete factual predicates
can provide alternative bases for finding an element of the
offense to have been established, a defendant is entitled to
jury unanimity as to the factual predicate supporting a finding
of guilt," 137 N.H. 126, 129 (1993).  The NHSC rejected that
argument:

> In Greene, following a question from the jury during
> deliberations, the trial court erroneously instructed
> the jury that it need not unanimously find any one of
> the three acts of unprivileged physical contact

alleged in the complaint.  Greene, 137 N.H. at 128,
131.  In Greene, however, the defendant was charged
with misdemeanor simple assault on a police officer in
that she "punch[ed] [him] in the face with her fist
and in the torso with her fist and did further kick
him about the body."  Id. at 127 (quotation omitted
and emphases added).  In that case, the element of
unprivileged contact was alleged to be three separate
blows.  Id. at 129.  Here, in contrast, the
indictments charged the defendant with recklessly
causing "bodily injury" to the victim in that he
caused "contusions and muscle strain to [the victim's]
head and neck."  Thus, the jury was required to find
that the defendant recklessly caused "bodily injury"
to the victim.  The defendant does not cite, nor could
we find, a case in which a court has held that a jury
must be unanimous as to which alleged injury was
caused by an assault.  We therefore conclude that any
error in failing to instruct the jury that it had to
unanimously agree on a specific bodily injury caused
by the defendant's conduct was not plain.

Fischer I, 165 N.H. at 718 (parallel citations omitted).[24]

Perhaps inspired by the NHSC's stated inability to find "a
case in which a court has held that a jury must be unanimous as
to which alleged injury was caused by an assault," Fischer I,
165 N.H. at 718, Fischer went out and found United States v.
Prentice, 683 F. Supp. 2d 991 (D. Minn. 2010).  In Prentice, the
defendant was charged with an assault that "result[ed] in
serious bodily injury, to-wit: a broken arm, two broken ankles,

---

[24] The court explained that for it "to find plain error:
'(1) there must be an error; (2) the error must be plain; (3)
the error must affect substantial rights; and (4) the error must
seriously affect the fairness, integrity, or public reputation
of the judicial proceedings.'"  Fischer I, 165 N.H. at 718
(quoting State v. Guay, 164 N.H. 696, 703 (2013)).

and long bone injuries to both legs." <u>Id.</u> at 1005.  The
defendant moved to dismiss the indictment on grounds that it was
duplicitous.  <u>See id.</u> at 1005.[25]  Judge Frank ruled that the
indictment was not duplicitous, <u>see Prentice</u>, 683 F. Supp. 2d at
1006, and denied the motion to dismiss, in an order that adopted
the following reasoning by Magistrate Judge Erickson:

> Given that the victim allegedly suffered several
> injuries, we recognize that there is the potential
> that a less than unanimous Verdict could be returned,
> if the Jurors concluded, in less than unanimous
> numbers, that the Defendant was guilty of one of the
> charged injuries.  For example, certain of the Jurors,
> but less than an unanimous number, might find that the
> Defendant inflicted a broken arm on "Baby Doe," and
> other Jurors, but less than an unanimous number, might
> find that the Defendant inflicted two broken ankles on

---

[25] The order in <u>Prentice</u> describes the concept of duplicity
in the following way:

> "'Duplicity' is the joining in a single count of
> two or more distinct offenses." <u>United States v.</u>
> <u>Moore</u>, 184 F.3d 790, 793 (8th Cir. 1999), quoting
> <u>United States v. Street</u>, 66 F.3d 969, 974 (8th Cir.
> 1995).  As such, "[t]he risk behind a duplicitous
> charge is that a jury may convict the defendant
> without unanimous agreement on a particular offense."
> <u>Id.</u>; <u>see also</u>, <u>United States v. Street</u>, <u>supra</u> at 974
> ("The principal vice of a duplicitous indictment is
> that the jury may convict a defendant without
> unanimous agreement on the defendant's guilt with
> respect to a particular offense.").  "The focus of a
> duplicity inquiry is whether distinct and separate
> 'offenses' are alleged in a single Count." <u>United</u>
> <u>States v. Finn</u>, 919 F. Supp. 1305, 1345 (D. Minn.
> 1995), quoting <u>United States v. Correa-Ventura</u>, 6 F.3d
> 1070, 1081 n.18 (5th Cir. 1993).

683 F. Supp. 2d at 1005 (parallel citations and subsequent
history omitted).

"Baby Doe."  While the findings of the Jury would not
be unanimous as to any particular injury, there might
be unanimity that the Defendant was guilty of
inflicting some physical injury upon Baby Doe.  We
agree with the Defendant, that he is entitled to a
unanimous Verdict as to any given physical injury, but
we conclude that means exist to effectively assure an
unanimous Verdict.

In our view, any risk, with respect to the
requirement of unanimity, can be cured by the Trial
Court, through the use of limiting instructions and
Special Verdict forms, which would assure unanimity
with respect to each of the injuries charged.  See,
United States v. Rabinowitz, 56 F.3d 932, 933 (8th
Cir. 1995) ("The risk of a nonunanimous jury verdict
inherent in a duplicitous count may be cured by a
limiting instruction.").

Id. (additional citations omitted).

In his state-court habeas petition, Fischer claimed that

his appellate counsel provided ineffective assistance by failing

to find Prentice and provide it to the NHSC.  Judge Schulman

rejected that argument:

While Prentice certainly supports Fischer's
position, it does not support it so authoritatively as
to render appellate counsel's representation
ineffective.  The citation to a single, trial level
decision would hardly have established plain error.
Therefore, Fischer cannot establish a reasonable
probability that, had appellate counsel cited Prentice
he would have won his appeal.  Furthermore, it was
certainly not deficient representation for New
Hampshire appellate counsel to fail to become aware of
non-controlling decisional law from the District of
Minnesota.

Fischer IV, slip op. at 35.

Fischer argues that while he "cannot offer additional on-point cases because he lacks access to the legal resources to do so, surely similarly holding cases exist in other State and Federal courts."  Pet'r's Mem. of Law (Doc. No. 16) 71.  But he has neither argued nor established that Judge Shulman's decision was based on an unreasonable application of Strickland.

Moreover, this court concurs with Judge Schulman's assessment of the strength of the authority provided by Prentice; that decision was issued by a trial court in another jurisdiction.  Beyond that, Prentice is not "DIRECTLY ON POINT," Pet'r's Mem. of Law (Doc. No. 16) 71, given the different procedural postures of that case and this one.  While Prentice states that the defendant in that case was "entitled to a unanimous Verdict as to any given physical injury," 683 F. Supp. 2d at 1006, the context of that statement shows that Prentice is not "a case in which a court has held that a jury must be unanimous as to which alleged injury was caused by an assault," Fischer I, 165 N.H. at 718 (emphasis added).  More specifically, Prentice did not involve a challenge to a trial court's failure to give an instruction on jury unanimity.  For all the foregoing reasons, this court concurs with Judge Schulman that the persuasive value of Prentice is not sufficient to support a

claim that Fischer's appellate counsel provided ineffective assistance by failing to cite it to the NHSC.

To restate, petitioner has not established that Judge Schulman's decision was based upon an unreasonable application of <u>Strickland</u>.  Accordingly, Claim 12 (c) fails.


## **Certificate of Appealability**

The Rules Governing Section 2254 Proceedings ("§ 2254 Rules") require the court to "issue or deny a certificate of appealability when it enters a final order adverse to the party."  § 2254 Rule 11(a).  The court will issue the certificate "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because Fischer has failed to make a substantial showing of the denial of the constitutional right, the district judge should decline to issue a certificate of appealability.


## **Conclusion**

For the reasons detailed above, the district judge should deny Fischer's petition for a writ of habeas corpus and should also decline to issue a certificate of appealability.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice.  <u>See</u> Fed. R.

Civ. P. 72(b)(2).  Failure to file an objection within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617
F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by
objections to magistrate judge's report are subject to review by
district court; issues not preserved by such objection are
precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

September 2, 2016

cc:  David Fischer, pro se
     Elizabeth Woodcock, Esq.